PIERCE *v.* STATE OF INDIANA.

[No. 168 S 12. Filed April 1, 1970. Rehearing denied May 14, 1970.]

---

* This case was assigned to the writer of this opinion on January 30, 1970.

*Lawrence Booram,* of Anderson, for appellant.

*Theodore L. Sendak,* Attorney General and *Kenneth M. Mc-Dermott,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant was convicted of first degree murder in the Madison Circuit Court and sentenced to life imprisonment. We have heretofore granted appellant's petition for a belated appeal pursuant to our Rule P. C. 2, Section 2.

For the sake of clarity it is necessary to review the history of this cause. On July 1, 1965, an indictment was returned in Marion County charging the appellant with first degree murder in the strangulation death of Norma Jean Toney. Upon appellant's motion, the cause was venued to Hamilton County. The trial in Hamilton County resulted in appellant being found guilty of murder in the first degree and sentenced to death. However, appellant's motion for a new trial, which was based largely upon newly discovered evidence, was granted. It was then that appellant's trial counsel filed a

motion for a change of venue from Hamilton County alleging publicity and news coverage of appellant's trial prevented appellant from being afforded a fair new trial. Change of venue was granted and the cause was venued to Madison County. The attorney who had been appellant's trial counsel in Hamilton County and who had obtained the change of venue from that county then withdrew and a new attorney entered an appearance on behalf of the appellant in the Madison Circuit Court. It is from his conviction for first degree murder in Madison County that appellant takes this belated appeal.

Appellant first argues that the Madison Circuit Court was without jurisdiction because the motion for a change of venue from Hamilton County was filed by appellant's trial counsel without the knowledge and consent of the appellant. The motion is also attacked as not having been verified in conformity with Supreme Court Rule 1-12C. Appellant does not challenge the fairness of the trial he received in Madison County nor does he allege that he would have received a more impartial trial in Hamilton County.

On July 5, 1966, after a new trial was granted, appellant filed a motion asking that "this cause be venued to some other county not influenced by Indianapolis T.V. broadcasts and Indianapolis' and Noblesville's newspaper publications." Oral argument was heard thereon and the motion was granted. Appellant struck from the list of counties submitted and the cause was venued to Madison County. Appellant appeared in that court and asked for time to consult with his family and his attorney. His attorney filed, in the Madison Circuit Court, a motion for the names of the state's witnesses, a notice of alibi and a motion to suppress various evidence. The cause was set for trial. Not until February 14, 1967, the day before the trial, did appellant for the first time question the venue of the cause.

In our opinion the objection to the venue was not timely. The trial court has the power to grant a change of venue for

the reasons stated in the motion. The appellant knew of the change yet made no objections. *Pollard* v. *State* (1969), 252 Ind. 513, 250 N. E. 2d 748; *Clark* v. *State* (1853), 4 Ind. 268.

Appellant next argues that it was error to permit the introduction into evidence of certain photographs and that these photographs served only to excite the passion and prejudice of the jury. The record shows that the bodies of Norma Jean Toney and Mabel Toney were found in the same bed. Appellant was charged only with the murder of Norma Jean Toney. The photographs that appellant objects to were photographs taken at the scene of the crime and showed the bodies of the two women lying on the bed. It is appellant's contention that the portion of the pictures showing the body of Mabel Toney, for whose murder he was not charged, should have been excised prior to the introduction into evidence of the photographs.

The fact that the photograph might arouse the passions of the jury is not a sufficient ground in itself to justify its exclusion from the evidence if the photograph is material and relevant. *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N. E. 2d 899; *Wilson* v. *State* (1966), 247 Ind. 680, 221 N. E. 2d 347. The relevancy of a photograph is to be determined by an inquiry as to whether or not a witness would be permitted to describe the objects or scenes photographed. Here the photographs showed the scene of the crime. It is undisputed that the photographs represented a true and accurate depiction of the scene. The record is replete with testimony describing the scene. As we noted in *Brown* v. *State* (1969), 252 Ind. 161, 247 N. E. 2d 76, whatever the jury may learn through their ears they may learn through their eyes. The pictures merely supplemented the testimony of various witnesses and presented a more accurate picture than a verbal description. Their relevancy cannot be disputed. 3 Wigmore on Evidence, 3rd Ed., § 792, p. 178.

Appellant further argues that Exhibit D, which was a photograph of the upper portion of the body of the victim, was merely cumulative evidence and prejudicial. An examination of the photograph indicates that marks are clearly discernable on the victim's neck. The implication of foul play is apparent. The previously introduced photographs did not disclose the strangulation marks. The photograph was identified by Dr. Palmer as a picture of a person taken immediately before an autopsy was performed. Dr. Palmer testified he was not present, nor did he see the victim, at the scene of the crime. The picture, therefore, served the purpose of establishing that the person upon whom the autopsy was performed was the same person found at the scene of the crime. Upon the basis of the record before us the court committed no error in admitting the picture into evidence. The admission or exclusion of cumulative evidence, assuming this evidence to be such, is within the sound discretion of the trial court. *Chappell* v. *State* (1926), 197 Ind. 272, 150 N. E. 769.

Appellant next charges that the prosecution suppressed certain evidence capable of establishing his innocence. The evidence allegedly consisted of a bed sheet found beneath the bodies that allegedly bore footprint marks and three sandwich bags from a nearby restaurant. After extensive examination, we are constrained to hold that appellant's charges find no support in the voluminous record of this cause.

The custody and possession of these sheets from the time they were removed from the scene of the murder was stipulated to by the appellant and the prosecutor. The record shows the sheets were taken to the police property room, as was all other physical evidence collected at the scene of the crime, and placed in one of four corrugated containers; the appellant thereafter filed a motion for the production of all physical evidence, which was granted; the investigating police officer testified that pursuant to court order the corrugated containers were made available to the defense, and that appel-

lant's attorney and the appellant personally examined the four boxes. Appellant's counsel introduced into evidence various exhibits. One was exhibit #9 which consisted of a corrugated container containing various objects. Appellant's attorney, upon introducing the exhibit into evidence, stated:

> "Defendant's Exhibit '9' includes the following items: *sheets,* brown sack and paper, pillow and case, envelope with writing—*from bed where bodies were found,* pillow, blanket, sheet, pillow case, pillow and case, sheet, envelope." (Emphasis added)

We find no substance to the charge that appellant and his attorney had no opportunity to examine those items.

Appellant's charge of suppression as it relates to sandwich bags from a nearby restaurant likewise is baseless since the existence of such articles is subject to question. The only evidence in the record supporting appellant's claim that such articles existed was contributed by a witness for the defense whose recollection of the state of the murder scene was very inconsistent. Appellant's attempt to torture this situation, where the very existence of the articles is doubtful, into a prosecutor's scheme to suppress evidence must fail. The evidence must be shown to be relevant material and of some substantial use to the accused. *United States* v. *Tomaiolo* (1967), 378 F. 2d 26. We find the appellant has shown no error in the connection.

Appellant next argues misconduct by the prosecution for failing to compare all identifiable fingerprints found at the scene of the crime. Appellant's argument is directed specifically at two soft drink bottles found at the scene of the murder. He takes issue with the manner in which the fingerprints thereon were checked. Appellant lists the persons he believes were other suspects and argues their prints were not checked. The appellant is in error.

The record indicates that some of the fingerprints found at the scene of the crime were identifiable and some were not.

With the exception of four individual prints, all of the identifiable fingerprints belonged either to the decedent, the mother of the decedent or appellant. The four fingerprints which were identifiable, but unidentified as to whose prints they were, were found primarily upon the two soft drink bottles. The record shows that the prints of two other persons, who head up appellant's list of alternate suspects, were compared to the unidentified prints on the soft drink bottles and the results of these tests showed that these unidentified prints were not those of these two men. The prosecution need not anticipate every theory that the appellant might put forth. The appellant made ample use of the existence of the unidentified fingerprints on cross-examination in an effort to impeach the state's expert. The existence of such factors goes more to credibility of the state's case than toward showing misconduct. From an examination of the evidence we can only conclude that the finding of the jury is amply supported.

Appellant makes no contention the evidence is insufficient except as it relates to the evidence to support a finding of premeditated malice. As a practical matter, appellant's argument evolves into an assertion that appellant's guilt was not established beyond a reasonable doubt. Appellant states in his reply brief: "The evidence here only supports a conclusion of appellant's guilt, and it is not enough to support such conclusion beyond a reasonable doubt." The argument consists primarily of raising queries and speculation concerning appellant's various theories concerning the murder. For instance, appellant asserts that the fact that the blankets were pulled up so as to cover the bodies found on the bed "suggests the mind of a tidy woman rather than a man." We will not indulge in such speculation. It cannot seriously be asserted that it is our office to sit as a fact-finding body. As we have so often said, a conviction will not be upset if supported by substantial evidence of probative value. It is not our office to weigh the evidence and pass upon the credibility of witnesses.

The evidence is largely circumstantial. It indicates that appellant had been living with Mabel Toney, the mother of Norma Jean Toney. Appellant was married. Mabel Toney was pregnant. In May of 1964 the appellant moved out of the Toney apartment fearing he would be reported as a parole violator. At 10:00 p.m. on the evening of June 13, 1964, the appellant and Mabel Toney went upstairs to the Toney apartment. Norma Jean Toney was in an apartment downstairs watching television. At 11:30 p.m. the appellant called Norma Jean Toney upstairs. Appellant testified that he then left the apartment building, passing Norma Jean Toney on the stairs. The tenant of the downstairs apartment testified that she watched television until about 2:30 the following morning. She stated the stairs were not carpeted and that she could see and hear people using them. To her knowledge appellant did not descend the stairs while she was awake. Further, there were a number of people on the front porch of the apartment house until 2:00 the following morning. They did not see appellant leave. The room where the bodies were found had a rear door. However, this door was latched from the inside. Thus, appellant's only means of exit was down the front stairs. At 4:30 a.m. on June 14, 1964, appellant went to his brother's house and hurriedly sold his half interest in their busines to his brother for $90 cash and fled town. Appellant told his brother he was in trouble. He was apprehended in New York about ten months later. Appellant testified that after he left the Toney apartment he went to a local tavern and remained there until 2:00 the following morning. However, the owner of the tavern testified that the tavern was closed for the first three weeks in June of 1964. Flight and similar conduct indicate a consciousness of guilt, from which the jury may draw an inference, in connection with other circumstances, that the person so acting is guilty of the homicide charged. *Meredith* v. *State* (1966), 247 Ind. 233, 214 N. E. 2d 385. We feel the evidence is sufficient to support the jury's finding.

As the argument relates to premeditated malice, we believe the circumstances surrounding the crime amply support the jury's finding of first degree murder. The physician who performed the autopsy stated that death by strangulation would generally require several minutes of continuous pressure. Slow death by the means used in this case would give the appellant sufficient time to premeditate his act of killing; nevertheless, he kept the pressure applied for a number of minutes until death occurred. The jury could well have found the appellant had sufficient time to contemplate the killing, which could have been avoided by the release of his pressure during the minutes of strangulation. We have stated that no appreciable length of time need expire to form the premeditated intent to kill. *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439.

The judgment of the trial court is affirmed.

Hunter, C.J., concurs in result; Givan, J., concurs; Jackson, J., dissents with opinion, in which DeBruler, J., concurs.

### DISSENTING OPINION

JACKSON, J.—I am unable to concur in the majority opinion herein and dissent thereto. Appellant was charged by indictment filed in criminal court of Marion County, Indiana, which indictment in pertinent part reads as follows, to-wit:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that Arthur Pierce, Jr. on or about the 13th day of June, A.D. 1964, at and in the County of Marion and in the State of Indiana, did then and there unlawfully, feloniously, purposely and with premeditated malice kill and murder Norma Jean Toney, a human being, by then and there unlawfully, feloniously, purposely and with premeditated malice, choking and strangling the said Norma Jean Toney, of which strangling and choking the said Norma Jean Toney did then and there and thereby die; and the Grand Jurors aforesaid, upon their oaths aforesaid, do say and charge that the said Arthur Pierce, Jr., in the manner and form and by the means aforesaid unlawfully, feloniously, and with premeditated malice,

did kill the said Norma Jean Toney, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Appellant filed an affidavit for change of venue from Marion County and cause was venued to Hamilton County, Indiana. The trial in Hamilton County resulted in appellant being found guilty of murder in the first degree and sentenced to death. Appellant thereafter filed a motion for a new trial and the same was granted.

Thereafter, on July 5, 1966, there was filed in Hamilton Circuit Court in cause numbered C5-163 or alternatively numbered 11919 and the case is entitled *State of Indiana* v. *Arthur Pierce,* a pleading denominated "Petition to Transfer and Void Jurisdiction for New Trial," such petition reading as follows, to-wit:

"Petitioner Arthur Pierce, Jr., by Counsel Hall Cochrane, duly request the Court for the following relief.

1. That under the Statutes for change of venue under the Supreme Court rules in a first degree murder case, the defendant is not limited to a transfer to counties adjoining Marion County, which is the original County of jurisdiction of the above captioned matter, and that by reason of adverse newspaper, radio, and TV publicity of the defendant's first trial in Hamilton County, (first electric chair death sentence in Hamilton County), an odium attaches to the defendant in said County, and the plaintiff has an undue influence over the citizens of said County from which a new jury panel would be selected for a new trial, it is impossible for the defendant to have a fair trial by reason of aforesaid bias, and prejudice, and that this cause should be transferred to some other County for defendant's new trial.

2. That Hamilton County does not have proper facilities to confine the defendant in a fashion, and manner which would afford the defendant proper constitutional rights of freedom of ample consultation with his lawyer, or Attorneys, relatives, friends, and other witnesses and freedom of correspondence, or other communication, all vital to the defendants defense by reason of this Court placing the defendant in the State Reformatory at Pendleton, Indiana, outside the jurisdiction of Hamilton County, Indiana, re-

sulting in defendants confinement in the 'Punishment Cell Block' of that Institution, wherein, all privileges above set forth are denied the inmates of said cell block.

3. That by reason of the facts herein set forth, the Court should transfer this cause to some other jurisdiction, and release this cause from the jurisdiction of Hamilton County, by reason of the inability of said County to properly confine the defendant in a manner consistent with the defendants constitutional rights, and as required by law.

WHEREFORE: the defendant prays that, the relief sought herein be granted, and this cause be venued to some other County, not influenced by Indianapolis TV broadcast, and Indianapolis and Noblesville newspaper publications, and all other proper relief in the premises.

/s/ Hall Cochrane
Hall Cochrane, Attorney for Defendant."

Thereafter, on August 30, 1966, Noble Pearcy, Prosecuting Attorney for the 19th Judicial Circuit, by his deputy, John R. Barney, Jr., and Arthur Pierce, Jr., by his attorney, Hall Cochrane, appeared before the Honorable Edward New, Jr., Judge of the Hamilton Circuit Court, who ruled as follows:

"(1) Defendant has heretofore filed his motion for change of venue from Hamilton County, and August 30, 1966, was set for hearing on said motion.

(2) This cause was venued to Hamilton County by virtue of a prior change of venue from Marion County, granted from Criminal Court Division One.

(3) The Court now grants the defendant's motion for change of venue from Hamilton County.

(4) The Court now names the following six counties for purposes of striking, none of which are contiguous to Marion County: Bartholomew, Crawford, Monroe, Vigo, Montgomery and Madison.

(5) The defendant struck first and after the counties had been struck, in the listed order alternatively by the defendant's counsel and the State of Indiana, Madison Counted remained.

Therefore, it is ordered and decreed the cause be transferred to Madison County together with a complete transcript of all prior proceedings."

Thereafter, on the 14th day of February, 1967, the defendant prior to trial filed objections to the court's jurisdiction, which objections are found at page 15-PP, Transcript No. 1 and read as follows, to-wit:

*"Deft's Objection to Court's Jurisdiction*

The deft, in person, by counsel, objects to the Court's assumption of jurisdiction of this cause and objects to being placed on trial herein on the following grounds and for the following reasons, to-wit:

1. The transfer and for change of venue from Hamilton County, Indiana was not and is not in compliance with applicable law.

2. The action of the Hamilton Circuit Court in sending this cause to this Court for trial is contrary to law and not in compliance with Statutes and case law applicable thereto.

3. That by reason of the noncompliance of the Statute relating to Change of Venue, to-wit, Burns Statute 1956 Replacement, Section 9-1301 by the Hamilton Circuit Court, this Court has no jurisdiction to try this cause.

Respectfully Submitted<br>/s/ William C. Erbecker<br>/s/ Richard R. Wirt

/s/ Deft.
Arthur Pierce, Jr."

"BE IT REMEMBERED, That afterwards, to-wit: on the 14th day of February, 1967, the same being the 36th Judicial Day of the January Term, 1967 the following proceedings were had, to-wit:

STATE OF INDIANA
VS.                    CAUSE NO. 11919
ARTHUR PIERCE, JR.

Comes now the defendant and files his objection to court's jurisdiction, which objection is in the words and figures following,.to-wit:    (H.I.)

Comes now the Court, and defendant's objection to court's jurisdiction is overruled. The court now sustains the defendant's motion for the production of names and addresses of all witnesses the prosecutor will rely on and the defendant's motion for disclosure and production of evidence favorable to accused sustained as to physical evidence. The court now sustains the State's motion for production of names and addresses of all witnesses the defense will rely on. The

parties are now in open court. The defendant renews motion of objection to court's jurisdiction and said motion is overruled. The prospective jury, consisting of the following good and lawful men and women freeholders or householders of this County, Glen Hiatt, Carolyn Shaw, Robert Savage, Robert Woods, Harold Hedger, Vernon Shipley, Herbert Harvey, Joseph Brown, Clarence Schuster, Joe Lanane, Joan Sheets, Raymond Lalstrom, Betty Smith, Raymond L. Sell, William Hodson, Doris Passwater, Robert Ray, Ralph Shanahan, Cecil Hook, Freemont Idle, Gerrie Wolff, George Hawkins, Stanley Head, Kenneth Perkins, James Shaw, Clifford Hull, Edward Laman, Charles Main, Freeman Murdock, Phyllis Harless, Harold Holding, Edward Spangler, Wendell L. Craig, Stella Harris, Sharon Whetsel, Wayne Scott, Max McMain, Norma Schlossberg, Paul Jamerson, Robert Griggs are now sworn and voir dire examination conducted in part.

This cause is continued until February 15, 1967 at 9:00 A.M.

BE IT REMEMBERED, That afterwards, to-wit: on the 15th day of February, 1967 the same being the 37th Judicial Day of the January Term, 1967 the following proceedings were had, to-wit:

STATE OF INDIANA
      VS.          CAUSE NO. 11919
ARTHUR PIERCE, JR.

Comes now the Court and reconvenes. Voir dire examination continued and concluded. A jury is now called, consisting of the following jurors: Glen Hiatt, Carolyn Shaw, Robert Savage, Robert Woods, Harold Hedger, Vernon Shipley, Herbert Harvey, Joseph Brown, Clarence Schuster, Joe Lanane, Joan Sheets, Raymond Salstrom, Betty Smith, Raymond L. Sell, good and lawful men and women freeholders or householders of this county, who are duly sworn to try the issues joined herein and a true verdict render, the court having placed two alternates without disclosure as to which two jurors will be excused immediately prior to the deliberation. This cause is now continued until February 16, 1967 at 9:00 A.M.''

Appellant's motion for a new trial contained four specifications of which we need give consideration, in this dissent, only to those raised under the first and second paragraphs thereof and which will be more carefully and fully discussed later on.

Appellant's Assignment of Errors is the sole assignment that the court erred in overruling appellant's motion for a new trial. Appellant's motion for a new trial contains four specifications with certain sub-paragraphs under specifications 1 and 2. For the purpose of this dissent we deem it necessary to discuss only specification 1 and 2 and certain lettered sub-paragraphs thereunder.

Specification 1 of such motion is as follows, to-wit:

"1. Irregularity in the proceedings of the Court and orders of the Court and abuse of discretion by which the defendant was prevented from having a fair trial in this, to-wit:

a. The court erred in overruling the defendant's objection to the jurisdiction of the court trying said cause, and to the jurisdiction of the court over the defendant and subject matter of the cause, in that defendant never moved for, sanctioned or acquiesced in the removal of said cause to Madison County from the jurisdiction of the Hamilton Circuit Court of Hamilton County, Indiana."

Sub-section e of specification 1 reads as follows:

"(e) The court erred in overruling and denying defendant's objection to the court's assumption of jurisdiction in this cause, said cause never having been timely and properly transferred and/or venued to Madison County from Hamilton County, Indiana."

Sub-section f of specification 1 reads as follows:

"(f) The court erred in overruling defendant's objection to court's assumption of jurisdiction in this cause, said jurisdiction being vested in Hamilton County not in Madison County."

Specification 2 of appellant's motion for a new trial reads as follows:

"2. Said defendant as a further ground in support of his motion for a new trial herein because of errors of law occurring at the trial as follows, separately and severally, moves for a new trial on the following grounds and for the following reasons, to-wit:"

Sub-paragraph d of specification number 2 of appellant's motion for a new trial reads as follows:

"(d)   Error of law occurring at the trial in this: that the court unlawfully and illegally exercised and assumed jurisdiction of said cause, when the same had not been properly and legally transferred and/or venued to Madison County, Indiana, and thus, jurisdiction of the person and of the defense does not and did not vest in the Madison Circuit Court, nor in the trial judge trying said cause."

Sub-paragraph i of the second specification of the motion for a new trial reads as follows:

"(i)   Error of law occurring at the trial in this, to-wit: the court erred in overruling the defendant's motion to withdraw the submission of this cause and to remand the same to Hamilton County, to-wit, the defendant's motion and the court's ruling thereon being as follows, to-wit:

*Mr. Erbecker:*   The defendant at this time after the testimony of a witness and after jeopardy has attached, respectfully moves the court to withdraw the submission of this cause and to take appropriate measures and steps to have this cause remanded to Hamilton County for the following grounds and reasons; to-wit: Pursuant to the mandate of § 9-1305, Burns 1956 Repl., the case was taken to Hamilton County on a change of venue. The records in that show that said Hamilton Circuit Court took jurisdiction—assumed jurisdiction and thereafter a trial did take place in Hamilton County in which the same defendant here was found guilty. The records of the Hamilton Circuit Court further show that the defendant's motion for a new trial was timely and properly filed and a new trial was granted. Then thereafter, the court did, contrary to the dictates of case law, and in contravention to the change of venue statute, did attempt to send the cause to Clinton County and thereupon it was remanded back—or at least it found its way back to Hamilton County and thereupon the case was transferred to this county, which is in contravention to the statute because the statute wasn't complied with; that the case we are relying upon as being case law of the Indiana Supreme Court which binds this court is, *State ex rel. Fox* v. *LaPorte Circuit Court,* 236 Ind. 69, wherein the Supreme Court of the State of Indiana said in the portion pertinent to this case here and the motion I am making, said

this—the change of venue statute § 9-1301—Burns' 1956 Repl., is plain and unambiguous and there is no room for construction and it must be given affect by the courts. Prohibition against more than one change of venue from the county in the criminal prosecution is a part of the same proviso in § 9-1305—Burns' 1956 Repl.—as it is a prohibition against more than one change of venue from the judge and the accused is entitled to only one change from the judge and the same rule must apply to that provision of the same section of the statute which prohibits more than one change of venue from the county. The statutes (read statute) have left the number of change of venue which the defendant may have in a criminal case are mandatory and must be strictly followed. There is no language in Art. 1—§ 13 of the Indiana Constitution or in any other provision of the Constitution which specifically grants the accused the right to change of venue from the county in which the offense was committed nor is there any language in which the granting of such a change may be reasonably implied. Then it goes on to say, your Honor, the express portion of the opinion. That was the question of law—this was a writ of prohibition against the LaPorte Circuit Court from assuming jurisdiction. Now the question arises, is the defendant here guilty of latish [sic] in seeking this relief. The answer to is we respectfully maintain that the record shows that prior to the commencement of any proceedings, we timely and seasonably made application to the court not to assume jurisdiction, which is in the record. The motion was then a short time prior to the voir dire examination, renewed again and again it was denied. As to any contention that might be raised is in the Supreme Court of Indiana. We respectfully contend that this is ruling case law by the Supreme Court of Indiana, which is binding on this court. That, in substance, is our motion, if the State should contend that there has been an acquiescence or an agreement or a joining by the defendant in the proceedings that brought this case to here, the record is barren of any application by the defendant. The court takes judicial notice of his own record wherein there is a letter from Cochrane which more or less says in substance with reference to that particular point, that the defendant didn't join in. We therefore contend the jurisdiction as attached now and this court is bound by the decision of the Indiana Supreme Court. We mention there, that if there is any contention there on the part of

the State that there has been any acquiescence or agreement by the attorney, it couldn't stand in the face of the motion made here at the very inception of the proceedings and that therefore this court's assumption of this cause now is illegal and null and void and we respectfully pray the court to withdraw the submission and make an appropriate order and transfer the case back to Hamilton County by virtue of the pronouncement of the Indiana Supreme Court in that case which we contend is exactly on all points to the situation with which we are confronted here."

The judge's ruling on the motion is as follows:

"Let the record show defendant's motion overruled."

The third specification of appellant's motion for a new trial is as follows:

"3. The verdict of the jury is contrary to law."

The fourth specification of appellant's motion for a new trial is as follows:

"4. The verdict of the jury is not sustained by sufficient evidence."

Appellant under the motion for new trial properly saved and raised grave questions for consideration by this Court but in view of the gravity of the question concerning jurisdiction we deem it unnecessary to give consideration to any of the other points properly raised and saved by the defendant in his motion for a new trial.

Briefly the appellant's contention boils down to the proposition that the Madison Circuit Court was without jurisdiction of either the person or the subject matter of this cause as the same was in the Hamilton Circuit Court and therefore the judgment of the Madison Circuit Court appealed from is void. Appellant contends if he was entitled to only one change of venue from Marion County where the crime is alleged to have occurred that the second change to Madison County consti-

tuted an error not capable of being waived. Appellant emphasizes that the venue was first in Marion County. Appellant filed a motion for a change of venue from that county, which was granted, and the cause properly transferred to Hamilton County. Following his trial and conviction in the Hamilton Circuit Court appellant filed a motion for a new trial there which was sustained on the 24th day of June, 1966. The trial court's reason for granting a new trial, it should be noted, was based on newly discovered evidence and not because of any excitement or prejudice against appellant in Hamilton County. The entries of the Hamilton Circuit Court pertaining to the change of venue to Madison County are a matter of record in the transcript and briefs in this proceeding. The entry of August 30, 1966, shows that only the parties counsel were present at an argument on petition to transfer the cause. Appellant was not personally present, and the complete record is devoid of any notice given appellant of the hearing, or that he even knew of it. The petition to transfer jurisdiction, on which the argument and rulings were had, appears in the record and an examination thereof shows that it was signed by Mr. Hall Cochrane, then appellant's counsel, and not by appellant personally, nor was it verified or supported by affidavit.

After the cause reached Madison County, and after new counsel entered the case, appellant repeatedly made timely objection to the jurisdiction of the Madison Circuit Court over the cause and urged that it be remanded to Hamilton County. All objections were overruled, and a final judgment rendered against appellant notwithstanding the lack of jurisdiction had been brought to the trial court's attention time after time. Appellant filed his written objection to the court's jurisdiction before commencement of the trial and shortly thereafter renewed his objections. Later, during the State's case in chief, appellant again renewed objections to the court's jurisdiction, moved to withdraw the submission and for the court to remand the cause to Hamilton County.

We here adopt the portion of appellant's argument presented by counsel in appellant's brief as the arguments presented there have been summarized quite concisely and to the point.

"Appellant's trial counsel apparently relied upon the provisions of former Sections 9-1301, *et seq.*, Burns' Indiana Statutes relating to changes of venue in making his objections to the jurisdiction of the Madison Circuit Court. However, the Statute was superseded by Rule 1-12C, effective June 1, 1963. But, the restrictions in the former Statute as to the number of changes allowed were carried over into Rule 1-12C. The first paragraph of the Rule is fully pertinent to the proposition here, reading:

'In all cases where the venue of a criminal action may now be changed from the Judge, such change shall be granted upon the execution and filing of an unverified application therefor by the State of Indiana or by the defendant. *Upon the filing of a properly verified application,* a change of venue from the county shall be granted in all cases punishable by death and may be granted in all other cases when in the court's discretion cause for such change is shown to exist after such hearing or upon such other proof as the court may require. Provided, however, that the State of Indiana or the defendant shall be entitled to only one (1) change from the judge *and the defendant shall be entitled to only one (1) change from the county.*' (Emphasis supplied)

A former Statute, to-wit, numbered Section 2-1429, Burns' Indiana Statutes, gave a party a right to a change of judges in cases where a new trial is granted, but that Statute was repealed by Acts 1963, Ch. 29, Sec. 10.

Section 2-1432, Burns' Indiana Statutes, Pt. 1, Vol. 2, 1967 Repl. grants a party the right to a change from the county, notwithstanding any changes of venue theretofore taken, where either the Appellate or Supreme Court has reversed the judgment on appeal and the cause is remanded for a new trial. But that is not the case here.

If properly filed within time, provided Rule 1-12C authorizes either the State or the defendant to take a change from the judge upon an unverified application. Only the defendant is permitted the one change from a county, and it must be upon the filing of a *properly verified application.* Appellant's right to a change of judge had not been exhausted

when his motion for a new trial was granted, and an unverified application by his trial counsel, at that time, would have given him an absolute right to a change of judge. Again, that is not the case here.

In support of Appellant's objections to the jurisdiction of the Madison Circuit Court, Appellant cited and relied upon the case: *State ex rel. Fox* v. *LaPorte Circuit Court* (1956), 236 Ind. 69, 138 N. E. 2d 875.

While that case was decided upon the statutory procedures prior to the adoption of Rule 1-12C nonetheless the decision is fully applicable to the proposition urged here. Rule 1-12C is no less binding on the Hamilton and Madison Circuit Courts, and upon the Supreme Court, than was the former legislative Statute which prohibited a defendant from taking more than one change from a County.

This Court adopted Rule 1-12C after the decision in *State ex rel. Gannon* v. *Porter Circuit Court* (1959), 239 Ind. 637, 159 N. E. 2d 713 and of the United States Supreme Court in *Irvin* v. *Dowd* (1961), 359 U. S. 394, 3 L. Ed. (2d) 900, 79 Sup. Ct. 825. No doubt the Court had those decisions in mind when Rule 1-12C was written. If the Court had intended to extend the defendant's right in a criminal case to a second change of venue from the County, beyond the limitations stated in *State ex rel. Gannon,* surely the Court would have spelled out in the Rule the circumstances under which the second change is permitted.

In *State ex rel. Gannon* v. *Porter Circuit Court* this Court distinguished it from *State ex rel. Fox* v. *LaPorte Circuit Court* as follows:

'In support of his action respondent relies upon the case of *State ex rel. Fox* v. *LaPorte Circuit Court, supra.* We therefore examine the law and the facts in that case to ascertain its decisive effect upon the facts in the case at bar. We find that the facts with which we are presently concerned differ in two essentials from those present in the former instance.

First: There is a difference in the substantive facts stated in the affidavits for change of venue. In the former case the affidavit merely alleged the statutory grounds in general terms that the defendant could not have a fair trial "on account of excitement and local prejudice" of the citizens of the county. Here, however, the affidavit asserted that on the basis of specifically stated facts "it would be impossible for the defendant to have this case

heard *by a jury* in LaPorte County and have the case decided solely upon the evidence presented in court." (Our italics). The statement is tantamount to an allegation that it would be impossible to obtain an impartial jury to try the case in LaPorte County.

Second: In this case, as contrasted with the prior decision in the *Fox* case, *supra*, the state has concurred in the fact that under the specifically stated circumstances it would be impossible to obtain an impartial jury to try the case in the county of present venue.

This distinction is significant, for although under the Constitution (Art. 1, Sec. 13, *supra*) the accused is entitled to a trial by an "impartial jury," nevertheless the public policy regarding the venue of the action is unequivocally expressed. Except as otherwise authorized venue under the Constitution must be in the county where the offense was committed (except that by statute one change from the county is permitted "on account of excitement and local prejudice" which might interfere with the trial. The place of trial, like the right to trial by jury itself is a matter in which both the accused and the state are interested. It is of concern to both that the trial be had with the least possible delay and with the greatest possible advantage to both in the procuring of witnesses, and that the jury be permitted to view the situs of the offense, if desired.

For these reasons, where as in the former instance the state objected to a second change, it must be made to appear after attempt has actually been made to secure an impartial jury that such jury could not be obtained in the county of present venue. In the former case no attempt had been made to procure an impartial jury, nor was this deficiency supplied by a stipulation or agreement by the state that such facts existed. Therefore, the granting of the second change was contrary to law. However, in the instant case both the accused and the state in effect stipulate to facts which require a change in order that the accused be tried by an impartial jury as is his constitutional right.'

In Appellant's case here, no attempt was made in Hamilton County to procure an impartial jury. Nor does the record show, as did in the *State ex rel. Gannon* case, there was a stipulation or agreement of record by the State that an impartial jury could not be selected in Hamilton County. Exactly what did transpire in the Hamilton Circuit Court

with respect to transferring the cause is difficult for Appellant's appeal counsel to figure out. The parties discussed it with the Hon. Carl T. Smith, Judge of the Madison Circuit Court at two points in the Transcript: Vol. II, L. 4, P. 350 to L. 25, P. 356—Pages 19 and 36A this Brief; L. 3, P. 470 to L. 16, P. 478—Pages 19 and 39-41, this Brief. Regrettably, the letter from Mr. Hall Cochrane, referred to in the discussion, was not introduced into the record. Regrettably too, the trial Court did not immediately halt all proceedings in the cause when the matter of jurisdiction was first raised, and conduct a full scale hearing on the question. It would seem that the State was under an absolute duty, once the jurisdiction question was raised by the defendant, to show that this second change of counties was authorized under the guidelines set out in *State ex rel. Gannon* v. *Porter Circuit Court*. In the absence of any such showing, it follows that the Madison Circuit Court could not acquire jurisdiction.

One gathers from the admissions made by the State's attorney that the cause was first transferred from Hamilton County, but for some reason, not made clear, it was transferred back from Clinton to Hamilton County, and the Judge of the Hamilton Circuit Court expunged all records in his Court pertaining to this. Now, which County does have jurisdiction—Clinton, Hamilton, or Madison? Surely, one charged with a crime carrying the penalty of death or life imprisonment should have the benefit of the Court's record showing what actually transpired in that transfer to Clinton County? All Order Book Entries relating thereto should have been made known to the Madison Circuit Court on the jurisdictional question. Nor is there any record available to this Court. Appellant's appeal counsel knows of no way to bring up record that has been expunged.

It must be noted that in both *State ex rel. Fox* and *State ex rel. Gannon* there were *affidavits* for the changes. Rule 1-12C provides for the filing of a 'properly *verified* application' for a change from the County. The Rule is silent as to whether it must be verified personally by the applicant, or whether it may be by his counsel. The better, and safer rule, would be that the defendant verify it personally. This condition is expressly required later in the Rule where provision is made for a filing after the time for taking the change. Be that as it may, the petition for transfer of the cause was signed by Mr. Hall Cochrane, without verification. (Pages 14-15, this Brief, Supp. Tr. No. 2, Pages 2-3.) It therefore does not comply with Rule 1-12C, and was in-

sufficient for the Hamilton Circuit Court to act other than to deny it.

No doubt Mr. Cochrane prepared and signed the petition to transfer with the highest and best motives, and believing it in the interests of his client. No doubt too it was inconvenient for him to have obtained the necessary signature to an affidavit by the Appellant in person. There is no intent to impugn the integrity of Mr. Cochrane. But this merely serves as an example of the degree of caution an attorney must take in a criminal case to make sure he has complied with important procedural steps, particularly in jurisdictional matters.

Certainly, no criticism is intended leveled at the Hon. Leroy New, Judge of the Hamilton Circuit Court. The fact he granted Appellant a new trial evidences his fairness. His favorable action upon Mr. Cochran's petition to transfer the cause further evidences his fairness. But here again is an example where a trial court must exercise a degree of caution to assure itself that the strict requirements authorising a second change were followed, and more particularly, that the defendant, himself, personally asked for such change. At least, the defendant should have been returned to the Court at the time of the hearing of argument on the change, so as to assure the Court that he acquiesced, or consented, to such second change. The error in failing to have Appellant present is emphasized by the fact that he denied any acquiescence or consented to the change when it reached the Madison Circuit Court. Page 36A, this Brief, Tr. Vol. II, P. 356, Lines 4-11.

The error here in granting a second change from the county upon an unverified application by Appellant's counsel, without being verified personally by Appellant himself, and without the record clearly showing that the State agreed an impartial jury could not be obtained in Hamilton County, is incapable of being waived by the Hamilton Circuit Court. In the case of *Van Winkle* v. *Van Winkle* (1954), 124 Ind. App. 626, 118 N. E. 2d 389, the facts differ somewhat from the situation here, in that, it involved the granting of a divorce by a Court where another Court of concurrent jurisdiction had denied a divorce to the same parties. However, the reasoning and authorities cited in the case, are analogous to the situation here and fully support Appellant's contention that the Hamilton Circuit Court could not waive the error in granting the second change.

It was said by the Appellate Court:

'In 5 C. J. S., Appeal and Error, 1893, pages 1381, 1382, this rule is stated as follows:

"The court may, on its own motion, reverse the judgment where the error is very plain and such action is necessary to meet the ends of justice, *or the error is of a nature not capable of being waived.*" (Our emphasis)

See also *First National Bank of Elgin, Ill.* v. *Russell,* 124 Tenn. 618, 139 S. W. 734, 736; *Collins* v. *Hastings,* 1936, 283 Ill. App. 304, 309; *Stewart* v. *Lohr,* 1890, 1 Wash. 341, 25 P. 457.

In the case of *Loeb* v. *Mathis,* 1871, 37 Ind. 306, at page 314, our Supreme Court said:

"If the court below had no jurisdiction, then there was no trail, and we cannot look to the record to see whether the merits of the cause were fairly tired."

See also *Britton* v. *State, ex rel. Miller,* 1876, 54 Ind. 535, 540; *Kinnaman* v. *Kinnaman,* 1880, 71 Ind. 417, 421.'

It was made to appear to the Madison Circuit Court quite early, and long before any verdict, that the Appellant was being prosecuted in a county not having jurisdiction. Section 9-1813 and Section 9-1814, Burns' Indiana Statutes, Vol. IV, Pt. 1, 1956 Repl. read:

*Section 9-1813:* 'When it appears, at any time before verdict or finding, that the defendant is prosecuted in a county not having jurisdiction of the offense, the court shall order that all the papers and proceedings be certified and transmitted to the proper court of the proper county, and order the sheriff to take the defendant and deliver him to the sheriff of the proper county, there to await the action of the proper court of such county. The witnesses also shall be recognized to appear at such other court, that the prosecution may be proceeded with according to law.'

Section 9-1814: 'When a jury has been impaneled or cause submitted in either case contemplated in the last two preceding sections, such jury may be discharged or submission set aside without prejudice to the prosecution.'

It was held that Section 2-1011, Burns' Indiana Statutes, 1967 Repl. is applicable to criminal cases (*Robinson* v. *State* (1912) 177 Ind. 263, 97 N. E. 929). The Statute reads:

'Where any of the matters enumerated in section 85 (Sec. 2-1007) do not appear upon the face of the complaint, the objection, (except for the misjoinder of causes), may be

taken by answer. If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court over the subject of the action: Provided however, That the objection that the action was brought in the wrong county, if not taken by answer or demurrer, shall be deemed to have been waived.'

Under this provision of the Statute, an objection to the jurisdiction of the Court over the subject of the action is not waived. In any event the Appellant herein filed his written objections before the commencement of the trial and before jeopardy attached. (Page 18 this Brief.) In no sense did the Appellant stand by and make no objection to the proceedings, and the State is in no position to contend that he is estopped.

The Madison Circuit Court erred in not remanding the cause back to the Hamilton Circuit Court over the repeated objections of Appellant. It follows that all proceedings thereafter in the Madison Circuit Court, and more particularly the judgment rendered, are a complete nullity and void. Judge Emmert in *State ex rel. Pollard* v. *Superior Court of Marion County, Room 3,* (1954), 233 Ind. 667, 122 N. E. 2d 612, stated the rule thusly:

'A court is a creature of the law, instituted for the determination of questions of law and fact under defined restrictions and limitations. The territorial limits of its power, the subjects and classes over which its power may be exercised, the terms upon which it may put its power into action, are as firmly and clearly established as the right to adjudicate when authorized to do so; and, though a court of general jurisdiction, it must proceed in the manner and upon the conditions imposed by the law, and an assumption of jurisdiction over a subject or a person, upon terms denied by the law, is as unwarranted and futile as the assumption of jurisdiction without its territorial limits. A departure from the limits and terms of jurisdiction is usurpation of power that imparts no validity whatever to its judgments and decrees. Works, Jur. p. 28, Sec. 10, and authorities cited. Hence, we have the generally accepted rule that, when a court proceeds without jurisdiction of the subject-matter, its judgment is wholly void; and, adopting as our own the words of the court in *Sheldon's Lessee* v. *Newton,* 3 Ohio St. 494, on page 498, "it is equally unimportant how technically correct and precisely certain in point of form its record

may appear, its judgment is void to every intent, and for every purpose, and must be so declared by every court in which it is presented." ' *Lowery* v. *State Life Ins. Co.,* 1899, 153 Ind. 100, 102, 54 N. E. 442."

We must conclude from the facts as they appear in the record and the argument and citation presented by appellant that the Madison Circuit Court was totally lacking in jurisdiction of either the person or the cause in the pending case and that the judgment of conviction obtained therein is a nullity. The cause should be reversed and remanded to the Madison Circuit Court with instructions to remand the same to the Hamilton Circuit Court for further proceedings not inconsistent with this opinion.

DeBruler, J., concurs.

NOTE.—Reported in 256 N. E. 2d 557.