**UNITED STATES of America**

v.

**NATIONAL HOMES CORPORATION.**

Civ. No. 114.

United States District Court
N. D. Indiana,
Hammond Division at Lafayette.

Aug. 4, 1961.

---

William P. Rogers, Atty. Gen., Kenneth C. Raub, U. S. Atty., Fort Wayne, Ind., for plaintiff.

George T. Schilling, Lafayette, Ind., Herbert Borkland, Bergson and Borkland, Washington, D. C., for defendant.

SWYGERT, Chief Judge.

*Introduction*

The question presented at the pre-trial hearing on June 5–8, 1961 is the admissibility into evidence of the government's survey of the prefabricated house industry.

The government proposes to submit its survey to show the dimensions of the line of commerce involved in this case and as part of its claim that the defendant's acquisitions may be substantially to lessen competition or tend to create a monopoly.

The evidence introduced at the pre-trial hearing showed that the survey was undertaken by the Anti-trust Division of the Department of Justice beginning in March, 1960. It is based on a questionnaire sent to approximately 571 companies. The names of these companies were secured from the membership list of the Home Manufacturers Association,

from trade literature and from answers to question 16 of the questionnaire which asked the respondents to list other companies engaged in the manufacture of prefabricated houses. 93% of the companies which were sent questionnaires have been heard from or accounted for. The 37 companies who have not been heard from are still being contacted by telephone and telegram as part of the follow-up procedure adopted by the government to assure responses to the questionnaires.

### Contentions

The government argues that there is sufficient necessity to justify the admission of this survey in evidence. They urge that they surveyed the proper universe and that the survey was conducted in accordance with recognized survey procedures. Further, they state the questionnaire was understandable and unambiguous. Finally, they note that the defendant has not challenged the accuracy of the answers to questions 17 and 18 concerning the volume of sales of the respondent companies. Since the answers to the questionnaires are available to court and counsel, the government asserts that the parties or the court are in a position to interpret the results of the survey independently.

The defendant disputes the necessity for resort to this type of survey and urge that feasible alternatives exist for establishing the matters which the government wishes to show by means of the survey. They urge that the survey is inadmissible since it was prepared in preparation for the pending law suit by the government. The qualifications of the government economist are challenged and the coverage of the survey is deemed by the defendant to be inadequate, by reason of the claim that the total universe is not included. The questionnaire is attacked as being improperly designed and for containing ambiguous questions which cannot yield objective answers. Finally, the government's interpretation of the completed questionnaires which resulted in classification of companies as prefabricators or non-prefabricators is branded as arbitrary.

### General Statement Relating to Evidence in "Big Cases"

At the outset some general consideration of evidence problems as they relate to big cases may be warranted. It seems rather clear that there is a tendency to relax or modify many of the ordinary evidentiary rules in cases involving complex economic issues. See: Dession, "The Trial of Economic and Technological Issues of Fact: II", 58 Yale L.J. 1242 (1949) reprinted in Selected Writings on Evidence and Trial, 512 (1957). This is especially true in cases like the present one where the case is to be tried by the judge rather than a jury. Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides, inter alia, "all evidence shall be admitted which is admissible * * * under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity." In commenting on this rule Professor Moore has indicated that the courts have authority to admit evidence which might have been formerly barred by the exclusionary rules of evidence.

> "It is well known that the extensive and highly refined rules of evidence have developed largely as methods of controlling juries. It has been thought that a number of exclusionary rules are essential to prevent an untrained group of men from reaching erroneous conclusions regarding the facts developed at a trial. The validity of exclusionary rules of evidence as aids in determining what is a particular fact situation has been denied and rejected in practice before the administrative boards. In great measure the same result has been occurring in suits in federal courts formerly denominated equitable." 5 Moore's Federal Practice, 1310 (1951).

The comments of Judge Foreman in United States v. General Electric Co., D.C.1949, 82 F.Supp. 753, are another

reflection of this tendency to relax the exclusionary rules in antitrust cases:

> "Exaggerated and over refined niceties in the rules of evidence must give way to the broad terms of Rule 43(a), Federal Rules of Civil Procedure, if full effect to the anti-trust laws is to be given." Id., at page 903.

■ In addition to the authority of Rule 43(a) practical considerations of time saving in "big cases" require that means be sought to shorten and streamline the trial of complex cases. Certainly the use of surveys, if they are accurate and reliable, are one of the methods which are available to shorten the time of trial. In United States v. United Shoe Machinery Corp., D.C.D.Mass.1953, 110 F.Supp. 295, Judge Wyzanski himself urged the parties to use surveys or sampling devices to shorten the length of trial.

*Necessity for Survey, its Administration, and Coverage*

■ There would clearly appear to be sufficient necessity to resort to some type of survey or polling technique in order to get the underlying economic data which will be needed to aid in deciding this case. The fact that there exist alternative methods for securing the type of data which the government survey seeks to obtain should not preclude the government from employing the method for surveying the market which they have chosen. All that should be required is that the method employed be one that is reasonably calculated to arrive at the truth.

The Court does not feel that this survey should be rejected on the basis that it was prepared by the government. There are several reasons for this view. First of all, the survey was designed at least with regard to questions 1 through 3 and questions 6 through 18 to elicit objective factual information. Secondly, the method employed by the government to survey the universe is not that of sampling the universe and accordingly possibilities of bias in the selection of a sample are avoided. Additionally, the questionnaire form was prepared by a competent economist and was reviewed by statisticians in the bureau of the budget. Finally, since all of the questionnaires and the answers are available to the Court and to counsel there is ample opportunity for correcting or modifying any conclusions or judgments which the government has made based on the survey.

The Court is also of the view that the government economist who prepared this questionnaire and survey had the necessary qualifications to administer the survey.

■ The question of whether the survey adequately covers the universe or conclusively establishes the boundaries of the product market involved in this case is an independent question from the question of the admissibility of the survey. The government has attempted by its survey to identify those who are engaged in the prefabricated house industry. Whether its survey includes the entire universe of those so engaged is a question that must be postponed until the Court has heard all of the evidence to be offered on the question. The postponement of the Court's decision of the coverage question, however, does not render the survey inadmissible in its entirety. In other words, if the answers obtained in the survey are sufficiently trustworthy and accurate to be admissible, they should be allowed to come into evidence. Matters relating to the coverage of the survey would go to its probative value.

*The Hearsay Problem and Questions 4 and 5 of the Survey Questionnaire*

■■ Both parties in this case recognize that these surveys, if they are to be admitted, will come in as exceptions to the Hearsay Rule. This requires some analysis of the rule itself. The main policy underlying the hearsay rule is to protect the right of the party against whom the statement is being offered by giving him an opportunity to confront the person making the statement. Professor Morgan in 62 Harvard Law Review, 177 (1948) has pointed out that the right

to confront witnesses should exist in situations where there are present substantial risks of insincerity, faulty narration, faulty memory or perception. The declarations of company officials contained in their answers to the questionnaires forming the basis of this survey are undoubtedly taken from the records of their own companies. Thus, there would seem to be few risks that these statements would be subject to errors in memory or perception. Similarly, since these statements are signed by company officials and based on their own company records, there would seem to be little reason to doubt the sincerity of their statements. Under the element of faulty narration Professor Morgan pointed out that cross-examination can serve a useful purpose in exposing ambiguity in the use of words on the part of the declarant. In this survey there are possible risks of error in narration, based on the fact that there exists some possible confusion as to the meaning of the term prefabricated house or prefabricated house package. Analytically, it appears that the only one of the hearsay dangers present in this case is the possible danger of faulty narration of the declarant.

The chief difficulty with this survey relates to question No. 4. Does the term "prefabricated house" which is used in that question have a uniform meaning or is there such ambiguity in the use of the term as to run the risk of confusion which Professor Morgan labels as "faulty narration"? There is evidence to indicate that there is some uncertainty as to the use of the term "prefabricated house" on the part of the respondents. The most striking example of this is found in the fact that 79 companies answered question No. 4 by stating that they did not consider their companies to be in the business of manufacturing and selling prefabricated houses, yet they answered a questionnaire from the House Manufacturers' Association which asked if they were engaged in the manufacture of prefabricated houses, by stating that they were so engaged.

However, the government questionnaire does contain a number of checks on the validity of the answers given in response to question 4. Those respondents who answered "yes" to question 4 then answered a series of questions which provided such objective factual information concerning their business operations as to permit an independent evaluation of the accuracy of their answers to question 4. Also some of those respondents who answered "no" to question 4 went on to answer sufficient questions so as to permit a similar independent evaluation of their answers to question 4. Thus, there appears no reason why the answers to questions 17 and 18 made by these respondent companies cannot be considered by the court as an indication of the volume and sales and of the states in which sales were made by these firms.

However, a majority of the respondents who answered question 4 "no" either answered no further questions or answered merely question 5. Question 5 requires that companies who answered "no" to question 4 give a brief description of their operation. There is no way of knowing if these companies make components, or of the dimensions of such components. There is no indication if most or all of the major structural components are produced by them and shipped in a package to the building site from a permanently established plant. There is no way of ascertaining if they sell a package which can be erected in a short number of man hours. In short, the objective criteria which is furnished by a company who completed the questionnaire is not required to be furnished by companies who answered merely question 5. By failing to require such factual information question 5 does not provide an adequate check on the validity of the answer to question 4.

Accordingly, the Court should admit those questionnaires where the respondents answered "yes" to question 4 and answered the remaining questions, as well as those questionnaires where the respondents answered "no" to question 4, but went on to complete the questionnaire. Because of the uncertainty among some of the respondents as to the term

"prefabricated house", whose questionnaires where the respondents answered "no" to question 4 and answered no further questions or answered merely question 5 should be rejected since their trustworthiness is of some doubt.