Clarence **LASSITER**, Plaintiff,

v.

**UNITED STATES LINES, INC.,**

and

**United States of America, Defendants and Third-Party Plaintiffs,**

v.

**UNITED STATES of America,**

and

**Norfolk Terminal Corporation, Third-Party Defendants.**

Civ. A. No. 149–72–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

May 3, 1973.

428

Ralph Rabinowitz, Norfolk, Va., for plaintiff Clarence Lassiter.

Charles R. Dalton, Jr., Norfolk, Va., for United States Lines, Inc.

David V. Hutchinson, Admiralty and Shipping Section, U.S. Dept. of Justice, Washington, D. C., Michael A. Rhine, Asst. U. S. Atty., Norfolk Va., for U. S.

Walter B. Martin, Jr., Norfolk, Va., for Norfolk Terminal Corp.

OPINION AND ORDER

KELLAM, Chief Judge.

Stevedore, Clarence Lassiter, employed by Norfolk Terminal Corporation (Nor-

folk), instituted this action against United States Lines, Inc. (Ship), to recover for injuries sustained while engaged in stripping a container at Norfolk. Ship filed a third-party action against United States of America (Government) and Norfolk Terminal Corporation for indemnity, costs and attorneys' fees. Government filed a cross-claim against Norfolk for indemnity, costs and attorneys' fees in defending the action. Plaintiff thereafter filed an amended complaint naming Government as a defendant, asserting the action against Government arose under the Federal Tort Claims Act, and further, that the injuries sustained by plaintiff were a direct and proximate result of the negligence, unseaworthiness and breach of warranty of each defendant "in and about the loading of a certain container."

Plaintiff's action against Ship was tried to the jury on March 5, 1973, on the issue of negligence. The jury returned a verdict for Ship.

At the same time, the Court heard the evidence as to all other issues. Hence, the action involved a claim of plaintiff against Ship and Government, action of Ship against Government and Norfolk for indemnity, attorneys' fees and costs for defending the claim, and Government's claim against Norfolk for indemnity, attorneys' fees and costs.

## I

Ship contracted with Government to make available for its use containers, and to transport them. Government agreed to stuff and strip the containers and to deliver them to and transport them from Ship's wharf. A container was made available to Government in England. Government contracted with Butler's Warehousing and Distribution, Ltd. (Butler), to stuff U.S. Army household goods in such container. Thereafter, the container was delivered to Ship at its wharf in England and loaded by Ship on the SS AMERICAN LANCER (LANCER) for shipment to Norfolk, Virginia, On September 29, 1970, the container was off-loaded at the Norfolk International Terminal pier by Ship, acting through Southern Stevedoring, Inc. The container was then placed in storage, where it remained for approximately two months.

On November 29, 1970, pursuant to agreement between Government and Norfolk, the container was spotted outside of Norfolk warehouse No. 2 for stripping.

## II

The container is 8 feet by 8 feet by 40 feet. It was stuffed with crates of household goods. The crates are of plywood, dismountable, and measure approximately 6 feet by 6 feet by 44 inches. These crates were stuffed in the container in two rows, side by side, with a void space of about two feet at the top.

When the container was opened,[1] it was readily apparent that one of the first two crates was not sitting flat on the floor of the container. Instead, it was suspended between the outer wall of the container and the side of the other crate, and appeared to be resting on a lip of the adjoining crate. This crate was some four or more inches off of the floor of the container. While plaintiff was engaged in some activity with the two crates, he alleges that the crate which was not flat on the floor, fell on his heels and injured him.

The issue of what caused the crate to fall the four or more inches to the floor, is in dispute. On discovery and at trial, plaintiff related his activities at the time the crate fell. There were material differences in the two accounts. In fact at trial, when asked to explain why his testimony was different from the testimony given on discovery, he said that after the time of the discovery deposition, he talked to his gang boss about

---

[1]. It had been sealed by Government when delivered to Ship and so far as is known, it had not been opened until opened by Norfolk on November 29, 1970.

the accident and his gang boss told or reminded him what had happened.

The evidence is clear that one of the crates in the container was not sitting flat on the floor of the container. It was recognized by plaintiff and his gang boss as a dangerous condition.

There was testimony that plaintiff was in the container with a crow bar trying to pry one of the crates off from the outside wall of the container. As plaintiff faced the container, the crate on his right was not sitting flush on the floor and appeared jammed against the other container. Facing the crates, he was trying to pry the crate on his left away from the side of the container wall. The reason given for this action was that there was a small "lip" at the doorway of the container, and a crate flush with the outside wall, when pulled or moved to the doorway would catch on this lip. Hence, to pull the crate from the container, it was necessary to move the crate away from the wall so it would slide past the lip. At trial, plaintiff's witness said plaintiff was in the process of prying the crate from the outside wall when he was injured. The crate to plaintiff's left as he entered the container was some six inches or more nearer the door of the container. It seems that logic would establish that if plaintiff was in the act of trying to force a crow bar between the side of the crate and the side of the container, he would be facing the crate, or at the least, facing the side of the container with his right side to the end of the crate. In this position, it is difficult to see how the crate on the right side of the container—some 44 inches from the point where he was trying to insert the crow bar between the side of the container and the crate on the left—could possibly fall on his heels rather than on his toes or the side of his foot. Yet, he says the crate fell on his heels.

The more credible and logical evidence, and that which the Court accepts as true, confirms the explanation given by plaintiff at time of his discovery deposition. There he said a rope was fastened to the crate which was resting flush on the floor, and the other end of the rope was fastened to a tow motor on the ground on the outside of the container, which was being used to pull the crate to the end of the container. There, the crate could be lifted out of the container by a forklift. Plaintiff said he was in the act of guiding the rope when he was hurt. In such a situation, it was reasonable for him to be standing in front of the crate not being pulled (the crate which was not flat on the floor of the container) facing the tow motor, with his heels at the end of the raised crate. In this position, when the suspended crate fell, it would strike his heels.

The discovery deposition was introduced in evidence by Ship and is Defendants' Exhibit 2.

■ Rule 32(a)(2) of the Federal Rules of Civil Procedure provides that a discovery "deposition of a party . . . may be used by an adverse party for any purpose." Hence, "the Rule permits a party to introduce, as a part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at the trial or has testified there" on the basis "that statements of a party which are inconsistent with his claim in litigation are substantively admissible against him." Community Counselling Service Inc. v. Reilly, 317 F.2d 239 (4th Cir., 1963); Zimmerman v. Safeway Stores, Inc., 133 U.S.App.D. C. 342, 410 F.2d 1041 (1969); Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467 (9th Cir. 1961), cert. denied 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed. 2d 170.

### III

The evidence is uncontradicted that it was dangerous for a workman to remain in the container while a tow motor was attempting to pull a crate to the end of the container or doorway. While there was no direct evidence as to what caused one of the crates to be raised from the floor of the container, all of the expert

witnesses were of the opinion it occurred when stuffed into the container in England. There was uncontradicted evidence that it could not have occurred while being loaded aboard the ship, or while in transit, or when off-loaded. The opinion of the experts also related what should have been done when the condition was discovered, namely, a block should have been placed under the suspended crate to prevent its falling, or the container, which was on a chassis, could have been pulled to a platform or ramp, where a forklift could drive into the container and lift the crates clear, or the crates could have been dismantled, and the goods removed.

Better reasoning indicates the condition was created at time of stuffing, and that the means used to unstuff the container contributed in a substantial degree to the injury. Not only was a dangerous condition apparent to plaintiff and his gang boss, but he remained in the container while attempting to have a tow motor pull the crate out. The accident could have been avoided by the use of care, such as chocking the raised carton, or removing plaintiff from the container while the tow motor was attempting to pull the crate out, or having the container moved to a platform or ramp where a forklift could have driven in the container, or dismantling the crate in the container.

### IV

A jury has determined that Ship was not guilty of any negligence which proximately caused or contributed to plaintiff's injury. No challenge is made to the correctness of that finding. In fact, there was no negligence shown upon which a jury could have returned a verdict against Ship.

### V

Plaintiff's amended complaint asserts a claim against Government under the Federal Tort Claims Act, but the allegations further say the claim is for negligence and breach of warranty.

The container in question was loaded or stuffed in England by Butler under a contract with Government. The contract has been marked as Government's Exhibit 2. Among other things, the contract provides that Butler will be responsible for and hold Government harmless from bodily injury and death of persons occasioned in whole or in part from negligence or fault of Butler.

■ The evidence establishes that the condition in the container was due to improper stuffing. Plaintiff says this fixes liability on Government for the negligent stuffing of the container. It cites Jablonowski v. United States, 230 F.Supp. 740 (D.C.Pa.1964), and General Electric Company v. Moretz, 270 F.2d 780 (4th Cir. 1959). Answering this contention, Government says that Butler was its independent contractor, and that it cannot be held liable for a negligent act of an independent contractor under the Federal Tort Claims Act. Yates v. United States, 365 F.2d 633 (4th Cir. 1966). Government also says that if the container was improperly stuffed, it was not done by a Government employee, but by an employee of Butler, an independent contractor. Further, Government says that any negligence in the stuffing occurred outside of the United States, and under such circumstances is not covered by the Federal Tort Claims Act. Waiver of sovereign immunity in the Federal Tort Claims Act does not apply to "any claim arising in a foreign country," 28 U.S.C. § 2680(k). *See* Maneman v. United States, 381 F.2d 704 (10th Cir. 1967).

In Revel v. American Export Lines, 162 F.Supp. 279 (E.D.Va.1958), affirmed 266 F.2d 82 (4th Cir. 1952) an action involving issues similar to those here, the Court pointed out that it was "manifest that United States is not responsible for the negligence of an independent contractor," but there "would seem to be an implied contractual agreement . . . wherein the United States agreed to provide the stevedoring services to such extent as they would be performed 'with reasonable safety.' "

[162 F.Supp. 286]. Further, the Court said that the claim of the shipowner against its expert stevedoring contractor does not sound in tort but is exclusively *ex contractu* for breach of warranty, express or implied, of expert professional performance.

At this point it appears from the evidence Ship furnished a container to Government, to be stuffed by Government. Government contracted with Butler to do the stuffing. Butler negligently did the stuffing and breached its contract of expert professional performance. Thereafter the container was delivered to Ship, which transported it to Virginia. It was discharged by Ship and placed in storage at Norfolk International Terminal. Thereafter Norfolk, as stevedore, under contract with Government, undertook to strip the container. When the container was opened, it was discovered that one of the crates was not sitting flush on the floor. It is established this condition was due to negligence or breach of workmanlike service of Butler. But, Butler is not a party to this action.

## VI

■ Here, the action of plaintiff against Ship was for negligence and unseaworthiness, a tort. When injured, he was on land unstuffing a container which had been discharged from the ship more than 60 days. He was an employee of Norfolk, whch had contracted with Government to unstuff the container. Ship was not a party to that contract, or a beneficiary under it. Ship had contracted with Southern Stevedoring to unload the container from the ship at Norfolk. Ship had completed its delivery of the container to Government, its consignee, and Government had accepted it. It no longer had any connection with Ship. Nor, was Ship in any way responsible for the condition of the crates in the container. No part of the ship's equipment or machinery was in any way connected with the injury or the condition which caused the injury. It is now clearly established that "the maritime tort jurisdiction of the federal

courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States." Victory Carriers, Inc. v. Law, 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971), rehearing denied 404 U.S. 1064, 92 S.Ct. 731, 30 L.Ed.2d 753. This case made it clear that "accidents on land were not within the maritime jurisdiction as historically construed by this [Supreme Court] Court. Piers and docks were consistently deemed extensions of land; injuries inflicted to or on them were held not compensable under the maritime law." Victory Carriers v. Law, *supra* [404 U.S. at 206, 92 S.Ct. at 422].

■ Plaintiff was not injured while loading or unloading a vessel. Since *Victory Carriers* makes it clear that "longshoremen injured on the pier in the course of loading or unloading a vessel are legally distinguished from longshoremen performing similar services on the ship" and that there are remedies which the Supreme "Court and Congress have recognized are available to longshoremen injured on navigable waters and those injured ashore, whether in the service of the ship or not." [404 U.S. at 212, 92 S.Ct. at 425]. Under the evidence in this case, plaintiff has no tort action under admiralty either against Ship or Government. His only claim is under the Compensation Act. Here, like in *Victory Carriers,* plaintiff "was not injured by equipment that was a part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship, the forklift was not under the control of the ship or its crew, and the accident did not occur aboard ship or on its gangplank." Victory Carriers v. Law, *supra,* [404 U.S. at 213–214, 92 S.Ct. at 426].

■■ In determining whether a tort claim comes within the statutory grant of admiralty jurisdiction, it is the situs of the tort, i. e., the place where it happened, that controls. State Industrial Commission of State of New York v.

Nordenholt Corp., 259 U.S. 263, 271, 42 S.Ct. 473, 66 L.Ed. 933 (1922). In applying the locality test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act has its inception, but where the impact of the act or omission produces such injury as to give rise to the cause of action. The Plymouth, 70 U.S. 20, 3 Wall. 20, 18 L. Ed. 125; McCall v. Susquehanna Electric Company, 278 F.Supp. 209, 210 (D. C.Md.1968). Since the tort occurred on land, it is not within the admiralty jurisdiction. Victory Carriers v. Law, *supra*; American Export Lines, Inc. v. Revel, 266 F.2d 82, 84 (4th Cir. 1959); Howmet Corp. v. Tokyo Shipping Co., 320 F.Supp. 975 (D.C.Del.1971).

Further, it is clear that plaintiff's sole remedy is under the Compensation Law. In *Victory Carriers,* in answering the contention that a longshoreman was entitled to recover without proof of fault, the Supreme Court said:

. . . we are constrained to note that the longshoreman already has a remedy under state workmen's compensation laws that does not depend upon proving derelictions on the part of his employer. Recovery without proving negligence is not the issue here; nor is it the equities of the injured longshoreman's position as against those of the shipowner who has had and exercises no control whatsoever over the use of the stevedore's equipment on the dock. What is at issue is the amount of the recovery, not against a shipowner, but against the stevedore employer. As this case illustrates, the shipowner's liability for unseaworthiness would merely be shifted, with attendant transaction costs, to the stevedore by way of a third-party action for indemnity. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The State's own arrangements. for compensating industrial accidents would be effectively circumvented.

Perhaps such laws provide inadequate benefits, but we are poorly positioned to conclude that they do or for that reason to give special remedies to longshoremen when other employees operating forklifts for other employers in perhaps equally hazardous circumstances are left to the mercies of state law. Claims like these are best presented in the legislative forum, not here.

Here, the contract of carriage between Ship and Government had ceased. The container had been delivered to and accepted by Government, the consignee. It was placed by Government in storage at Norfolk Terminal for safekeeping. Some sixty days later consignee moved its property from storage. The maritime contract of carriage had ended.

■ It is not disputed that Norfolk contracted with Government to unstuff the container. Norfolk was an independent contractor with Government, and since no action may be maintained against Government for negligence of an independent contractor, plaintiff's claim must fall.

■■ The contract between Norfolk and Government for services, insofar as it related to this container, was not of a maritime nature. And so, the implied warranty of workmanlike service peculiar to contracts between ships and stevedores does not apply. Plaintiff was not a third-party beneficiary to either the contract between Ship and Southern Stevedoring for off-loading of the container from the vessel to the pier at Norfolk Terminal, or the contract between Ship and the Government for transportation of the container. Bernard v. U. S. Lines, et als, 475 F.2d 1134 (4th Cir. 1973). Nor can plaintiff recover under the contract between Government and Norfolk.

The consignee, Government, arranged directly with Norfolk for labor in plaintiff's gang. The ship was not a party to or concerned with this contract. Here there was no delegation of the ship's work by the ship. Plaintiff was not employed by the ship's consent. No warranty would extend to those with whom

Ship had no connection whatsoever. Daniel v. Skibs A/S Hilda Knudsen, 253 F.Supp. 758, 763 (E.D.Pa.1966).

Judgment will accordingly be entered for Government in the action of plaintiff against it. Ship is not entitled to indemnity from Government for its costs and attorneys' fees in defending this action, nor is Government entitled to indemnity from Norfolk for its costs and attorneys' fees. Each party will bear its own costs.