**William James ROGERS, Appellee,**

v.

**Walter ROTH, Appellant.**

**No. 72–1549.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 27, 1973.

Decided May 8, 1973.

---

Leonard O. Thomas, Kansas City, Kan. (David K. Fromme of Weeks, Thomas, Lysaught, Bingham & Johnston, Kansas City, Kan., and Harold E. Doherty, Topeka, Kan., with him on the brief), for appellant.

Raymond L. Dahlberg, Great Bend, Kan. (H. Lee Turner, Great Bend, Kan., with him on the brief), for appellee.

Before SETH, Circuit Judge, DURFEE *, Judge, and McWILLIAMS, Circuit Judge.

SETH, Circuit Judge.

This is an appeal in a diversity negligence action which arose in Kansas from a car-motorcycle collision. The case was tried to a jury which found for the plaintiff. The issues on appeal concern basically the use of a discovery deposition of a non-party; changes in the deposition made by the deponent after the material was transcribed; and the motivation for the changes. By reason of the fact that basic issues were left unresolved during the course of trial, we must reverse and remand for a new trial.

Much of the argument on appeal concerns the version as to how the accident occurred as given by a young man, then seventeen years old, who was riding on the motorcycle with the plaintiff when it was struck by defendant's car. The principal issue relates to the manner in which some asserted changes in this person's story were used by the plaintiff's attorney before the jury.

Jeff Jensen, who is not a party to the suit, was riding behind the plaintiff who was operating the motorcycle at the time of the collision. He was not injured in the accident, and he described what took place to several people at the scene immediately after the collision, and to others some short time later. He also signed a written statement for the insurance adjusters a day or two after the accident. Some two years later the plaintiff took Jeff Jensen's discovery

* Judge, United States Court of Claims, sitting by designation.

deposition. Signing of the deposition by the witness was not waived. The reporter transcribed the questions and answers, and submitted them to counsel for both sides. The defendant's attorney, Mr. Patterson, wrote a letter dated October 1, 1969, to Jeff Jensen's father in which he indicated that some of the statements made by Jeff as they appeared in the transcription were not consistent with the statement the witness had theretofore given to the insurance adjusters or others. Specific references were made in the letter or attached portions of the transcription. Jeff Jensen thereafter appeared before the reporter who had taken the deposition and made some of the changes referred to in the above letter of October 1, 1969. The witness was not sent, and did not see, a copy of the letter, but he did have copies of some pages from the transcription of the deposition which apparently accompanied the letter, and whereon portions were underlined. The deposition was so changed, sworn to, and signed by the witness. Thereafter the plaintiff with the consent of the court again took or resumed, Jensen's deposition. During this deposition, the witness was examined at length as to the reasons for the changes in his answers.

Some two years elapsed after the depositions above referred to until trial was held. The record shows that Jeff Jensen was present in the court room during the course of the trial, but neither side called him to testify. The defendant testified as to what Jeff Jensen had told him and others about the accident shortly after its occurrence. It was during the course of the cross-examination of this witness, and an expert witness, that the incidents took place, and rulings were made, which defendant-appellant asserts as grounds for reversal.

During the course of the trial, but in chambers, the depositions were discussed by the attorneys, as were the changes, and the letter from defendant's attorney to the father of Jeff Jensen. These conferences were at the close of plaintiff's case and there suggestions were advanced by plaintiff's attorney that defendant's attorney had acted improperly in reference to the changes in the deposition of Jensen. It was pointed out that the father of the witness was a partner in an insurance agency with the defendant, and the policy covering defendant had been written by the agency.

The method used in making the changes as related to Rule 30(e), Fed.R. Civ.P., the propriety of the changes, and the propriety of the actions by defendant's attorney in suggesting changes in the deposition were not resolved in the face of these challenges by plaintiff's attorney. These problems were also not resolved during the course of the trial, the facts were not developed, and no inquiry was then made into the changes nor why they were made, nor the position of defendant's attorney in relation thereto.

As indicated above, the problems came to the fore during the cross-examination of the defendant who testified as to statements made at the scene by Jeff Jensen. Also the issues arose during the cross-examination of defendant's expert witness Stackley who sought to reconstruct the accident.

Some of the cross-examination of defendant is as follows:

"Q. (By Mr. Turner) I am talking about, you learned about Mr. Patterson's conversations with Don Jensen about the necessity to get Jeff Jensen to change his story, didn't you?

"Mr. Patterson: Object to that, assuming facts not in evidence, as prejudicial.

"Mr. Turner: I am entitled to attack the credibility of Jeff Jensen, Your Honor, under the Rule.

"The Court: Well, if there is any basis for your making that statement, of course you are.

"Mr. Patterson: I might ask that it be stricken and the Jury instructed to disregard it unless and until there is some evidence of such an accusation.

"The Court: Well, let's find out what the witness says.

"The Witness: What was the question?

"Q. (By Mr. Turner) Let me do it this way: You know that the first time Jeff Jensen testified was by deposition on August 4, 1969, Great Bend, Kansas? A. That was the same day I did. Yes.

"Q. Yes? A. Yes; that is correct.

"Q. And then you learned later that Mr. Patterson had contacted his father with a suggested list of changes that Jeff Jensen should make in his testimony; didn't you, sir?

"Mr. Patterson: To which I object on the ground there is no evidence to that effect.

"Mr. Turner: There will be.

"Mr. Patterson: It is improper cross-examination.

"The Court: We'll see what his answer is. Overruled.

"The Witness: I knew that Jeff had made another deposition.

"Q. (By Mr. Turner) Well, so we are entirely clear about it. You and Don Jensen had talked extensively about this matter; hadn't you? A. We haven't really, no.

"Q. All right. Didn't Don Jensen tell you that Mr. Patterson had written him a letter suggesting that the changes that Jeff Jensen should make in his sworn testimony given on August 4, 1969, because his testimony hurt you?

"Mr. Patterson: To which we object on the ground there is no—object to the form of the question. It is improper cross-examination, outside the scope of the direct examination and does not serve to impeach the declarant or the witness. It is injected purely for prejudicial purposes.

"The Court: Overruled.

"The Witness: Yes."

There were subsequent similar questions and objections during the cross-examination of the defendant. The court in response to one objection stated that the persons concerned with the letter and the deposition were in the court room and could be cross-examined.

During cross-examination of defendant's expert Stackley, who reconstructed the accident, further statements and references to the changes in the deposition were made by plaintiff's attorney, and his personal view was expressed as to the reasons for the changes. In reference to the attorney for defendant providing portions of the deposition for the use of the expert, the following cross-examination took place:

"Q. Did he point out the portions of the Jeff Jensen's testimony that he gave before he received instructions from his father—

"Mr. Patterson: Again to which we object on the ground that Counsel assumes that this in fact occurred. I think it is prejudicial. I think I would like to have a hearing before the Court.

"The Court: I have read these depositions, Mr. Patterson. That is what happened.

"Mr. Patterson: Well—

"The Court: You are overruled.

"Q. (By Mr. Turner) Okay, sir. Were you furnished that portion of Jeffery Jensen's deposition where he testified before he was instructed by his father as to how he should change his sworn testimony as a result of a letter he received from Mr. Patterson? A. I read both of his—

"Mr. Patterson: I would like to object, Your Honor, for the record.

"The Court: Well, you object for the record, but you are overruled.

"The Witness: I read both of them, sir.

"Q. (By Mr. Turner) Okay. My questions are going to be directed to his testimony under oath before he was instructed to start changing his testimony. Now, sir, first of all—

"Mr. Patterson: Your Honor, I wonder if I can have a continuing objection.

"The Court: You may have a continuing objection. You will be overruled.

"Go ahead."

This was followed by a series of questions by plaintiff's attorney wherein he would read questions from a deposition of Jeff Jensen, and ask the expert who was on the stand to read the answers. These "questions" were extensive, and much of the deposition, which was apparently in the form before it was changed, was so read to the jury. These portions had nothing to do with matters which concerned the expert witness nor his calculations. He had placed no reliance thereon. This was done over defendant's objections. There was objection made also that the witness was being asked to answer from portions of the deposition which had been later changed by the witness. To this the court said: "This was his recorded testimony, Mr. Patterson. You can show that he changed it if you wish." During the cross-examination of the expert, virtually the entire deposition of Jeff Jensen was so read to the jury, and its use went far beyond impeachment of the declarant Jensen which it purported to be. This also, as above indicated, was by using the deposition before it was changed.

Thus during the course of the trial there were repeated references by plaintiff's attorney as to changes in the story of Jeff Jensen; to requests made by defendant's attorney to Jeff's father that the deposition be changed, and references that the attorney for defendant and the witness had acted improperly. All this was before the jury, and the matter was never determined by the court during the trial. The trial concluded with continued references in the closing arguments to the jury to the actions by defendant's attorney in reference to the deposition of Jeff Jensen as being improper and an attorney of defendant was referred to as an "evidence manipulator."

The trial was concluded, the jury retired to deliberate, and the judge then questioned under oath Donald W. Jensen and Jeff Jensen. The deposition in its original form with the changes interlined, the written statement of Jeff Jensen given to the adjuster, the letter to Donald Jensen from defendant's attorney about the deposition with indications of portions of the deposition, and the second deposition were admitted as the court's exhibits.

Thereafter the jury returned with its verdict for plaintiff.

Defendant made a motion for a new trial which asserted in part the improper questioning by plaintiff's attorney in using the uncorrected deposition, in its use beyond impeachment, and in the suggestions made to the jury of improper conduct by defendant's attorney. The motion was overruled by the court in an order which recited that the circumstances disclosed ". . . a concerted effort on the part of a witness's father and the attorney employed by defendant's insurer to tamper with a witness and obtain substantial changes in his testimony." The court further said: "The Court believes that to permit the suppression of the glaring manipulations of the testimony offered by the witness Jeff Jensen in depositions which the witness Stackley says he used in forming his opinions on how the accident happened, in reconstructing it, would have been prejudicial to the plaintiff." Westinghouse Electric Corp. v. Wray Equipment Corp., 286 F.2d 491 (1st Cir.).

It is apparent from the above description and from the quotations that the issue as to the validity of the changes made by Jeff Jensen in his deposition, whether Rule 30 had been complied with, whether there was impropriety in suggesting the changes on the part of the father of the witness or on the part of the attorney for the defendant became a significant part of the trial. But the uncertainty continued throughout the trial, and was misused by plaintiff's attorney. The court in a post-trial hearing heard some of the witnesses, and reached the conclusion expressed in the

order denying the motion for a new trial.

Jeff Jensen never appeared as a witness before the jury, but one version of his testimony came in from the use of the unchanged deposition as read by plaintiff's attorney through the expert witness Stackley. The deposition as changed by Jeff Jensen before he signed it was not before the jury, nor was the second or continuation deposition taken some months later. We find no objection in the record by plaintiff's attorney as to the manner in which the deposition was changed by the witness several months after it was transcribed nor a motion to suppress the changes. He did, however, ask the court if he could again take the witness's deposition, and this was done.

■■ If a witness gives a deposition and signature is not waived, he may later make changes under Rule 30(e), and give reasons. This is contemplated and on occasion is obviously necessary. The references during the trial before the jury to the original version as being under oath were misleading and prejudicial since only portions of the answers were used. There was but one deposition, this was the original transcription with the interlined changes plus the continuation. Usiak v. New York Tank Bridge Co., 299 F.2d 808 (2d Cir.), refers only to statements by parties and contains no other holding. Rule 32(a)(4), Fed.R. Civ.P., requires the use of other portions when only part is used to present a fair picture. Westinghouse Electric Corp. v. Wray Equipment Corp., 286 F.2d 491 (1st Cir.). This rule should be applied especially when the witness has under the rules entered changes to his answer on the deposition. The party seeking to use the deposition has the burden of conforming with the rule.

■ The record indicates that during one of the in chambers conferences after the plaintiff had rested, the defendant's attorney told the court that he was not going to call Jeff Jensen as a witness, but would call others who had heard his statements made shortly after the accident. The court questioned defendant's counsel and stated that the court understood that the testimony of others would be offered under proposed Federal Rule 806. Defendant's attorney asserted there was no response from plaintiff's attorney, and we must assume there was consent that the matter would be so handled. The court indicated that the credibility of the declarant was subject to attack as if he had taken the stand. It was apparently under this theory that the trial court permitted what purportedly was the use as impeachment by inconsistent statement of the deposition through the expert witness. This we must hold was error as to so much of the deposition as was properly used to show a subsequent inconsistent statement, because the complete answer of the declarant in the deposition was not used, but only part. This was incomplete and misleading, and as indicated the issue was never resolved at trial. It was also error because "the deposition" was not used only to show an inconsistent statement, but was read to the jury as if it had been fully admitted in evidence. This was contrary to Rule 32.

The jury should have had properly before it sufficient facts to enable it to decide whether the subsequent statements of the declarant did in fact contradict the declarations of the eyewitness admitted as an exception to the hearsay rule as above recited. The contradiction theory was advanced by the plaintiff and he had the burden. As it turned out, the question whether the declarant was telling what he believed to be the truth in the deposition, or what someone else had influenced him to state as the truth as shown by the changes, the reason for the changes, and the circumstances surrounding them was never presented properly to the jury. All the jury had was the fact of change as to some of the answers, and the reasons expressed by counsel. The issue was raised by the plaintiff but was never put in a form suitable for proper consideration by the jury as should have been

done. The motion of defendant for mistrial together with the objections made preserved these points. See Calhoun v. United States, 384 F.2d 180 (5th Cir.). Much of the briefs of the parties and the authorities argued relate to the manner in which depositions may be changed, but as indicated we do not reach this question.

The trial judge, in the statement quoted above following a reference by plaintiff's attorney as to the changes instructed by the witness's father, said: "The Court: I have read these depositions, Mr. Patterson. This is what happened." The court so expressed to the jury its conclusion that the witness's father had instructed him to make changes in the deposition. This position of the court was expressly based on the depositions which were not before the jury. The jury was again precluded from properly passing on the truth of the statements of Jeff Jensen, and was left to speculate or rely solely on the court's statement of its conclusion, and the attorney's views. Straub v. Reading Co., 220 F.2d 177 (3d Cir.).

As indicated above, there were repeated references to the impropriety of defendant's counsel in reference to the depositions. This culminated in the description of defendant's attorney as an "evidence manipulator" by plaintiff's attorney in his closing argument. This issue of the propriety of the actions of defendant's attorney is somewhat different from the truth of the depositions or changes considered above. This issue was also improperly brought forward from time to time during the trial, and it also was not resolved or otherwise handled by the court to enable the jury to put it in its proper place. The issue was an obviously inflammatory and prejudicial one, and was so used by the plaintiff. It was and is in reality unrelated to the merits of the case. The defendant should not have been required to take the risk or certainty of a penalty from the jury for wrongdoing by his attorney (if there was such, which we, of course, do not decide) in connection with a deposition taken some two years before. This was a matter for the court to resolve, and to separate from the issues properly before the jury so that the defendant was not tried with the attorney on the basis of the subjective views of the attorneys. This matter loomed large unfortunately in the presentation of the facts.

The combination of these circumstances requires us to reverse, and to remand for a new trial.

Reversed and remanded.