HERMAN LEE CARROLL *v.* STATE OF INDIANA.

[No. 674S127. Filed December 10, 1975.]

Samuel H. Power, George G. Ponton, Power, Ponton & Nichols, of Monon, for appellant.

Theodore L. Sendak, Attorney General, Walter F. Lockhart, Deputy Attorney General, for appellee.

HUNTER, J.—Herman Lee Carroll was indicted and charged with first degree murder in the death of Anna Lee Hayes. He pleaded not guilty by reason of self-defense. After trial by jury, he was convicted of second degree murder and sentenced to not less than fifteen nor more than twenty-five years. In this appeal, eight issues are presented.

## I.

Article 1, Section 13 of the Indiana Constitution and Ind. Code § 35-1.1-2-1(a), Burns § 9-201(a) (1974 Supp.), provide that an accused shall be tried in the county where the offense was committed. In establishing proof of venue, the state on re-direct examination asked its witness, the Pulaski County Surveyor, whether the house in which Anna Lee Hayes was killed was located in Pulaski County. The witness stated that

it was. On re-cross the defendant asked this witness if he had ever legally established the northern boundary of Pulaski County, to which the state objected as being outside the scope of re-direct. The trial court sustained the objection, and the appellant urges such ruling as his first assignment of error.

On direct examination the surveyor stated that the house was in Pulaski County because it was on the south side of Road 800, which divides the northern part of Pulaski County from the southern part of Starke County. On cross-examination it was brought out that the witness was neither a licensed surveyor nor an engineer, and that his testimony was based upon a visual inspection, not a survey. The question posed by the state on re-direct was redundant and might have been objected to and excluded on that ground. *Hudspeth* v. *Allen,* (1866) 26 Ind. 165. Appellant did not object, but attempted in re-cross to re-emphasize the points made on cross-examination. Although redundant the question was not beyond the scope of re-direct as urged by the state, and the witness should have been permitted to answer. The ruling of the trial court, however, is not reversible. Appellant extensively cross-examined the witness. Moreover, appellant did not object when other witnesses stated that the crime occurred in Pulaski County.

## II.

On the evening of the killing the appellant struck the decedent's mother in the face with his fist, knocking her out. During the mother's testimony, the state introduced two photographs of the mother, taken that evening by the police, for the purpose of showing Mrs. Beckton's swollen face. Appellant objected to the introduction of these photographs as not properly authenticated and not relevant to his guilt or innocence. The trial court overruled the objection and admitted the photographs.

Photographs are admissible to evidence anything that a witness might himself be permitted to testify to, if identified

and verified by the witness. *Hawkins* v. *State,* (1941) 219 Ind. 116, 37 N.E.2d 79. Prior to introduction of the photographs in question, the witness testified, without objection, that she couldn't see out of her eye for about two to three weeks. Exhibits A and B clearly show such a swelling of the witness's right eye. Although the witness could not recall when the pictures were taken, she testified that the photographs looked "just like it did when I looked in the mirror when I got home." That statement is sufficient to identify the photographs as true representations of that which they purport to portray, and we hold that the exhibits were properly authenticated.

Exhibits A and B were offered to render more probable the inference that the appellant struck Mrs. Beckton. For such purpose the photographs were relevant. The fact of such assault was, however, not an issue in determining whether appellant killed Anna Lee Hayes. Thus, under traditional evidentiary analysis, we would say that the photographs were relevant, but not material, in that they tend to prove a fact not in issue. Nevertheless, trial courts enjoy a wide latitude in determining what evidence shall be admitted. We cannot say that the trial court abused its discretion in admitting Exhibits A and B, such exhibits being in support of Mrs. Beckton's testimony describing the events leading up to the murder.

### III.

Ollie Mae Wakefield and her husband Emerson were in the house with Anna Lee Hayes when the shooting occurred. Mrs. Wakefield's testimony placed the appellant outside the house pounding on the door, trying to get in. At this point the record reads:

DIRECT EXAMINATION—QUESTIONS BY PROSECUTOR TANKERSLEY
Q "Was Emerson still seated?"
A "Yes."

Q "Did either of you say anything?"

A "Yes, he says to Anna Lee, 'Don't unlock the doors.'"

MR. PONTON: "OBJECTION! Now this is Hearsay unless it is shown that the Defendant could hear the conversations that were going on inside of the house—uh, they would be Hearsay as to him, and inadmissible evidence."

THE COURT: "I'll overrule that objection, and let her testify as to what did go on."

Out-of-court statements offered in court for the truth of the matter therein are hearsay. *Blue* v. *Brooks*, (1973) 261 Ind. 338, 303 N.E.2d 269. The policy underlying the hearsay rule is to protect the rights of the party against whom the statement is offered by giving him the opportunity to confront the person making it. *U.S.* v. *National Homes Corp.* (N.D. Ind. 1961), 196 F. Supp. 370. Here, Emerson Wakefield, the out-of-court asserter in Ollie Mae Wakefield's testimony, was in court and subject to cross-examination. In fact, Emerson Wakefield testified, without objection, that Ollie Mae warned Anna Lee not to go to the door. There was no error in overruling appellant's objection.

It is not the particular answer set out above which appellant now seeks to have excluded by virtue of his objection, however. He seeks the exclusion of a statement by the same witness, appearing some forty questions and answers later, that after Anna Lee was shot she said, "That son-of-a-bitch done hit me, shot me." In support of his contention appellant cites *Neuwelt* v. *Roush*, (1949) 119 Ind. App. 481, 85 N.E.2d 506, quoting the following rule from 53 AM JUR. § 146 (1945):

"It is generally held that when an objection has once been distinctly made and overruled, it need not be repeated to the same class of evidence, since it may be assumed that the court will adhere to the ruling throughout the trial."

Assuming without deciding that appellant's objection may be deemed to have continued, nevertheless, we find the lines

following the above quotation but not set out in the *Neuwelt* decision, are relevant:

"To object continuously to the same character of testimony after the trial court has said it was proper approaches disrespect for the ruling of the court. But it has ▮▮▮ been held that where questions are once objected to and not answered and are later repeated and answered without objection, the objection is waived."

Here, the same question was previously asked and answered similarly by Emerson Wakefield, without objection. The error, if any, in admitting Mrs. Wakefield's statement, is waived.

## IV.

On direct examination, Ollie Mae Wakefield described an exchange of gunfire between Anna Lee Hayes and the appellant. Ollie Mae stated that *prior* to the first shot being fired—which came from outside the house—Anna Lee opened the kitchen door, leaving only the outside door between Anna Lee and the appellant. On cross-examination, defense counsel read to Ollie Mae from her deposition, wherein she stated in essence that the kitchen door was opened *after* the first shot was fired. On re-direct examination, the state, over objection, was allowed to read additional questions and answers from the deposition to rehabilitate its witness.

Appellant asserts that the state was precluded from using the deposition until it complied with IND. RULES OF CIVIL PROCEDURE, Ind. R. Tr. P. 32, governing the use of depositions in court proceedings. The rules of civil procedure are applicable in criminal proceedings insofar as they are not in conflict with the criminal rules. IND. RULES OF CRIMINAL PROCEDURE, Ind. R. Crim. P. 21. Ind. R. Tr. P. 32(A) provides in pertinent part:

"*Use of depositions.* At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testi-

fying, may be used against any party who was present or represented at the taking of the deposition, by or against any party who had reasonable notice thereof or by any party in whose favor it was given in accordance with any one [1] of the following provisions:

"(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

"(2) The deposition of a party, or an agent or person authorized by a party to testify or furnish such evidence or of anyone who at the time of taking the deposition was an officer, director, or managing agent, executive officer of a person designated under Rule 30(B) (6) or 31(A) to testify on behalf of an organization, including a governmental organization, or partnership which is a party may be used by an adverse party for any purpose.

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

"(a) That the witness is dead; or

"(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

"(c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or

"(d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

"(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; or

"(f) upon agreement of the parties.

"(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."

Appellant sanctions *his* use of the deposition under Ind. R. Tr. P. 32(A)(1). Since the state was attempting to rehabilitate—not impeach—its witness, appellant argues that the state must justify its usage under one of the remaining provisions of the rule. Ind. R. Tr. P. 32(A)(2) is clearly in-

applicable since that provision applies only to the depositions of parties and their agents, or the spokesperson of an organization. Appellant argues that the state failed to demonstrate the presence of any of the grounds set out in Ind. R. Tr. P. 32(A)(3); in its brief, the state has not replied to this allegation. Finally, appellant maintains that Ind. R. Tr. P. 32(A)(4) is inapplicable because the rule requires that the deposition be "offered in evidence by a party" and appellant did not formally offer the deposition into evidence.

Ind. R. Tr. P. 32(A)(1) permits the use of *any deposition,* whether of a party or non-party witness, for impeachment purposes. In such case, the questions and answers are read to the testifier in the hope that the trier of fact will conclude that the in-court testimony of the witness is not worthy of belief. It is uniformly understood that such use of a deposition is collateral and that the deposition is not being introduced as substantive proof of a disputed issue. *Proctor* v. *Colonial Refrigrtd. Transp., Inc.* (4th Cir. 1974), 494 F.2d 89; *Rogers* v. *Roth* (10th Cir. 1973), 477 F.2d 1154; *Townsend* v. *U.S.* (3d Cir. 1939), 106 F.2d 273; *Lewis* v. *United Air Lines Transp. Corp.* (D. Conn. 1939), 27 F.Supp. 946. *See also* 4 Wigmore, WIGMORE ON EVIDENCE § 1132 (Chadbourn Rev. 1972); Pike and Willis, *The New Federal Deposition-Discovery Procedure: II,* 38 COLUM. L. REV. 1436 (1938).

At the same time, Ind. R. Tr. P. 32(A)(3) severely limits the use at trial of depositions of non-party witnesses as substantive evidence.[1] Generally, such a deposition may not be introduced unless the witness is unavailable. The reason for the rule is cogently expressed in *Salsman* v. *Witt* (10th Cir. 1972), 466 F.2d 76, 79:

---

1. Contrast the virtually unlimited use of the depositions of party witnesses, as substantive evidence under Ind. R. Tr. P. 32(A)(2), irrespective of their presence in court. Fey v. Walston & Co., Inc. (7th Cir. 1974), 493 F. 2d 1036; Community Counslng. Serv., Inc. v. Reilly (4th Cir. 1963), 317 F. 2d 239; Lassiter v. U.S. Lines, Inc. (E.D. Va. 1973), 370 F. Supp. 427.

"The various restrictions imposed by Rule 32(a)(3) upon the use of depositions at trial make it clear that there has been no change in the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness be unavailable to testify in person. Wright and Miller, Federal Practice and Procedure, Civil: § 2142. Or, as was stated by Judge Learned Hand, in Napier v. Bossard, 102 F.2d 467 (2d Cir. 1939) : 'The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.' Indeed, the rule itself suggests 'the importance of presenting the testimony of witnesses orally in open court.' "

Here, the witness was present in court and it does not appear that there were either exceptional circumstances [Ind. R. Tr. P. 32(A)(3)(e)] or an agreement of the parties [Ind. R. Tr. P. 32(A)(3)(f)] to admit the deposition. We conclude that the state's use of the deposition may be justified, if at all, under Ind. R. Tr. P. 32(A)(1) or Ind. R. Tr. P. 32(A)(4).

The trial tactic of impeachment by prior inconsistent statement is multi-staged. First, the necessary foundation must be laid. Secondly, the impeaching statement is read to the witness. Finally, at some further point in the proceedings, the witness may explain the statement or, in the alternative, present evidence of prior consistent statements. *Thompson* v. *State*, (1944) 223 Ind. 39, 58 N.E.2d 112. Where the witness's explanation or prior consistent statement is a part of the same deposition from which the inconsistent statement is adduced, it does not place undue strain upon the words "contradicting or impeaching" of Ind. R. Tr. P. 32(A) to hold that such words embrace the entire process of impeachment, and so sustain the state's use of the deposition under Ind. R. Tr. P. 32(A).

Alternatively, we reject appellant's narrow reading of Ind. R. Tr. P. 32(A)(4) as being applicable only where the deposition is itself offered as substantive evidence. In *Rogers* v. *Roth* (10th Cir. 1973), 477 F.2d 1154, 1159, the Tenth Circuit Court of Appeals held that

it was reversible error to admit ". . . so much of the deposition as was properly used to show a subsequent inconsistent statement, because the complete answer of the declarant in the deposition was not used, but only part. This was incomplete and misleading. . . ." When, for impeachment purposes, under Ind. R. Tr. P. 32(A)(1), a deposition is read to the jury, that is all the "offering" which the law contemplates for such evidence, and Ind. R. Tr. P. 32(A)(4) becomes operative to insure a balanced and undistorted presentation. *See Scott* v. *Indianapolis Wagon Works*, (1874) 48 Ind. 75; *Gemmill* v. *Brown*, (1900) 25 Ind. App. 6, 56 N.E. 691, McCormick, McCORMICK ON EVIDENCE, § 56, n. 41 and accompanying text (2d ed. 1972). We, therefore, hold that it was proper to allow the state to introduce pursuant to Ind. R. Tr. P. 32(A)(4) those portions of the deposition relevant to the impeaching statement.

## V.

Appellant objects to the admission into evidence of state's exhibit G-1. G-1 is a 3½″ square, color photograph of the decedent, lying on the autopsy table. The decedent's chest has been laid open. Over the decedent's chest appears a pair of hands in surgical gloves. The left hand holds an organ which appears to be the heart. The right hand contains a probe which is pointed toward a darkened portion of the organ. This photograph was introduced during the testimony of a law officer who was present at the autopsy and who took charge of the bullets removed from the corpse during the post-mortem. Subsequently, Dr. Thomas P. de Graffenreid testified that the hands appearing in G-1 were his. He made no other reference to the photograph during his testimony, but did state that the cause of death was "a massive hemorrhage into the left pleural cavity due to a gunshot wound which lacerated the aorta."

Appellant objected to the admission of the photograph as inflammatory, prejudicial and devoid of probative value. In

*Pierce* v. *State*, (1970) 253 Ind. 650, 256 N.E.2d 557, we stated:

> "The fact that the photograph might arouse the passions of the jury is not a sufficient ground in itself to justify its exclusion from the evidence if the photograph is material and relevant. *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N.E.2d 899; *Wilson* v. *State* (1966), 247 Ind. 680, 221 N.E.2d 347. The relevancy of a photograph is to be determined by an inquiry as to whether or not a witness would be permitted to describe the objects or scenes photographed."

Generally, the inquiry as to whether a witness would be permitted to describe the object photographed focuses upon the particular witness through whom the exhibit is offered. Applying such a test to the law officer through whom the photograph was introduced is not without difficulty. The state in its brief urges, "In this case the Sheriff was present at the autopsy and a photograph of what he saw, bullets being removed from the body, is clearly relevant and admissible." The problem with such rationalization is that G-1 does not show any bullets. Nor does subsequent testimony indicate that a bullet was removed from the heart, but merely states that a bullet lacerated the aorta. However, there was no objection to the sheriff's authentication of G-1. The photograph itself was conditionally relevant to show the cause of death. When Dr. de Graffenreid subsequently testified that the cause of death was the laceration of the aorta by gunshot wound, any defect in the order of proof was cured, and there was no error in the admission of G-1.

## VI.

Appellant contends that the trial court erred in refusing to give appellant's instruction No. 4 on self-defense. The state asserts that appellant has waived the error, if any, by his failure to comply with that part of INDIANA RULES OF APPELLATE PROCEDURE, Ind. R. Ap. P. 8.3(A)(7), which requires that "the instruction shall be set out verbatim

in the argument section of the brief with the verbatim objections, if any, made thereto." Appellant's brief sets out the instruction verbatim, but does not set out the objection. However, as to this latter requirement, the rule clearly states "if any." The state's brief at page 22 states "In the record of the proceedings there is no trace of any objections to the trial court's refusal of defendant's tendered instruction." If there be no trace of an objection, appellant has not failed to satisfy the requirements of Ind. R. Ap. P. 8.3(A) (7).

It is a familiar principle that a trial court's refusal to grant a tendered instruction will be reversed only if, considering the evidence in the case, the substance of the instruction was required to be given and was not adequately covered by other instructions actually given. *Hash* v. *State*, (1972) 258 Ind. 692, 284 N.E.2d 770. We hold that instructions No. 21 and No. 22, given by the court, adequately instructed the jury on appellant's plea of self-defense. There was no error in refusing appellant's instruction No. 4.

## VII.

Appellant assigns as error the overruling of his motion for a directed verdict made at the close of the state's evidence and renewed at the close of all the evidence. A directed verdict of acquittal can only be given where there is a total lack of evidence on some essential issue, or where the evidence is susceptible of only one inference, and that being in favor of the accused. *Nelson* v. *State*, (1972) 259 Ind. 339, 287 N.E.2d 336. Here, the evidence was not so clear cut. Evidence favoring the appellant indicates that he did not fire the first shot and acted only in self-defense. On the other hand, the state presented evidence tending to show that appellant was the aggressor and that he was not without fault in the killing. Under these circumstances, a directed verdict of acquittal would have been improper. The

trial court correctly denied appellant's motions, thus allowing the disputed factual issues to be resolved by the jury.

## VIII.

Upon conviction of second degree murder, appellant was sentenced to fifteen to twenty-five years in prison, as provided by Ind. Code § 35-1-54-1, Burns § 10-3404 (1974 Supp.). Appellant urges that his sentence should not have been more than one to ten years—the penalty provided for involuntary manslaughter. In support of this contention, appellant relies upon Ind. Code § 35-4.1-4-6(c), Burns § 9-2201b(c) (1974 Supp.), which provides:

> "If the defendant is found guilty of a lesser included offense and if the lesser included offense carries a shorter minimum sentence than the minimum sentence provided for the greater offense originally charged, the minimum sentence may not exceed the minimum sentence provided by the statute for the lesser included offense."

As appellant interprets this statute, one convicted of *any* included offense (although not necessarily the least serious included offense) may not be sentenced to a term greater than the minimum sentence provided for upon conviction of the least included offense. Were we to reach the merits of appellant's claim, we would ask why the legislature if it intended the statute to read as appellant suggests, did not amend the last phrase to read "for any of the lesser included offense*s*" (thus adding the words "any of" and an "s" to the word "offense"). However, we find it unnecessary to reach appellant's suggested legislative interpretation. The statute, clear on its face, is applicable only when the greater offense carries both a maximum and a minimum sentence. Appellant was charged with first degree murder, and it carries only one sentence—life imprisonment. Therefore, upon conviction of second degree murder, appellant was correctly sentenced to a term of fifteen to twenty-five years.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Givan, C.J. and Arterburn, J., concur; Prentice, J., concurs with opinion; DeBruler, J., dissents with opinion.

### CONCURRING OPINION

PRENTICE, J.—I concur in the majority opinion but do so reluctantly with respect to Issue IV. Had I been the trial judge, I would have excluded the State's Exhibit G-1 which, unquestionably, was horrifying, inflaming, distorting, prejudicial and for the most part irrelevant and was, in my opinion, deliberately and improperly calculated to inflame the jury's emotions. The relevance of the exhibit was but slight and its necessity apparently nonexistent. Unfortunately, under *Pierce* v. *State* cited by the majority, and the cases there cited, such circumstances do not mandate exclusion of photographic evidence, if it can be said that there is relevance—no matter how slight.

Although we have said that the tendency of such photographs to arouse the passion of the jury is not a sufficient ground in itself to justify excluding the evidence, I am aware of no case where there has been a reversal by reason of such exclusion, where the tendency was substantial and the relevance but slight. I, therefore, believe that the wording of such decision has misled a number of trial judges into believing that they have no discretion where there is relevance, which, of course, is not the case.

The concept of weighing the relevance of photographic evidence against likely prejudicial effects is valid. The availability of stipulations or of other evidence equally as persuasive as the exhibit are factors which, in my judgment, may be considered by the trial judge in determining such questions of admissibility. However, the determination of relative merit lies within the province of the trial judge and, absent clear error, his decision should not be overridden.

The difficulty with the *Pierce* rule is its failure to separate the grain from the chaff. It was said in that case that the relevance of a photograph is to be determined by an inquiry as to whether or not a witness will be permitted to describe the objects or scenes photographed. However, there can be no justification in permitting irrelevant and prejudicial evidence to be appended to and thereby slide in with that which is relevant. Admittedly, a witness would have been permitted to describe the deceased's heart and the location and manner in which it was affected by the bullet that had penetrated and lodged within it. However, that witness would not have been permitted to describe the corpse slit open from the neck to the abdomen and from side to side, the vivid colors of the exposed marbleized fatty tissue and blood or the dangling breast that had been all but severed from the torso. Yet this is what has been portrayed by the exhibit in question, far more effectively than the location of the fatal wound. In fact, the bizarre, shocking and irrelevant appendage has obfuscated the relevant. The rule permitting photographic evidence of things a witness would be permitted to describe need not be thusly perverted to permit photographic evidence of things that he would not be permitted to describe.

If the State's genuine purpose in offering Exhibit G-1 had been to enlighten rather than to prejudice, the decedent's heart, which was relevant, could much better have been photographed against a neutral background. The failure of the State to have taken reasonable steps to eliminate the objectionable and irrelevant would have warranted the trial judge in rejecting the exhibit.

So, we are hampered in this case by the presence of relevance, in the evidence objected to, although such relevance was but slight; and although there was a substantial imbalance between the relevance and the prejudice, I think we may not override the trial court's judgment. I would vote to reverse, however, had the defendant's objection been grounded upon deliberate imbalance or upon unnecessary and unreasonable

imbalance of relevance and prejudicial irrelevance. In the alternative, the defendant also would have been entitled to require the State to crop the irrelevant and prejudicial portion of the photograph and to have had only the relevant portion thereof admitted into evidence.

## DISSENTING OPINION

DEBRULER, J.—I dissent and would reverse the verdict of of the trial court, because of the admission into evidence of the color photograph of decedent lying on the autopsy table. The majority opinion has described the subject matter of the photograph. The photograph is not material or relevant, nor does it tend to prove or disprove any material fact in issue. *Kiefer* v. *State*, (1958) 239 Ind. 103, 153 N.E.2d 899, 903, and cases cited therein.

The decedent's chest laid open has no remote relevance to any issue in this case. The heart held in a hand is not instructive to the jury. While a clear photograph of the heart alone, focused on the point of entry of the bullet, would have some relevance to cause of death, this photograph, unexplained, distracts the viewer because it includes so much that is irrelevant and does not show the point of entry clearly. It is not possible to determine anything about the circumstances or cause of death, the condition of the victim's body or the wounds of the victim from this photograph. On the other hand, such a distorted photograph unquestionably shocks anyone who looks at it. Although the jury may intellectually know that appellant had nothing to do with the wounds to the body made by the scalpel, such a photograph emphasizes the horror of the death of the victim. Seeing the victim in pieces tends to make it seem impossible that she could have shot first, before appellant who, though wounded, is very much alive.

In this case, where the question of self-defense was a close one, since the decedent fired shots at appellant, the error in admitting an irrelevant photograph, showing the victim in a physical condition far worse than the condition caused by the

bullet, could not be harmless error. The effect of a very prejudicial photograph on a jury must be weighed against its relevancy, and where the relevance is minimal and the prejudice to the particular theory of defense is great, to admit the photograph is reversible error.

NOTE.—Reported at 338 N.E.2d 264.